ADAM S. HETFIELD

*v.*

HERBERT E. WILLEY.

*Filed at Ottawa January 31, 1883.*

1. DECREE—*for payment of money must be according to contract.* On a bill for the specific performance of a contract, bearing date July 6, 1880, for the payment of money, payable in one and two years from its date, with interest, it is error to decree its payment in one and two years from the first day of August, 1880. Should the contract be enforced at all, it must be done as the parties made it.

2. SPECIFIC PERFORMANCE—*matter of legal discretion.* An application for the specific performance of a contract is within the sound legal discretion of the court, which is always controlled by the equitable circumstances of the case, and not by the mere caprice of the chancellor.

3. SAME—*character of contract enforceable.* Before a court of equity will compel the specific performance of a contract, it must appear that it was founded on a good and valuable consideration, and is reasonable, fair and just in all its parts. If the contract is not fair and just, or its enforcement specifically will be oppressive, or work a hardship, or is inequitable, it will not be so enforced. A court of equity is not bound to enforce every contract, though legal, and there be no sufficient reason for annulling the same.

4. Where one partner sold his interest in the firm to another for a sum to be paid in installments, a part in a few days and the balance in one and two years, for which two last installments the purchaser was to give his notes, secured by mortgage on real estate, with interest, and it appeared that the vendor concealed the fact that the firm was indebted largely in local debts not appearing upon the firm books, so that the assets of the firm were not nearly so valuable as the purchaser supposed them to be, the account of such indebtedness being kept in a private book of one of the partners, of which the purchaser had no notice, the contract will not be specifically enforced at the suit of the vendor, notwithstanding some delay on the part of the purchaser before refusing to pay, and notwithstanding the vendor informed him he did not know the value of his interest, and that he was only selling his interest, whatever it might be, but the vendor will be left to his remedy at law.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding.

· Messrs. TENNEY, FLOWER & CRATTY, for the appellant:

Where there is a remedy at law, a bill for specific performance will not lie. · Fry on Specific Per. secs. 12, 24, 29, 36, note 13; Story's Eq. Jur. sec. 717.

The contract must be free from fraud or unfairness of any kind. *Taylor* v. *Merrill*, 55 Ill. 52; *Mitchell* v. *King*, 77 id. 462; *Modiset* v. *Johnson*, 2 Black, 431; *Mortlock* v. *Butler*, 10 Ves. 292; 1 Story's Eq. Jur. sec. 741; *Race* v. *Weston*, 86 Ill. 91.

Even though free from intentional fraud, it will not be enforced unless founded on a good consideration, and be reasonable, fair and just. *Lear* v. *Choteau*, 23 Ill. 39; *Allen* v. *Hart*, 72 id. 104; *Thomas* v. *Coultas*, 76 id. 493; *Proudfoot* v. *Wightman*, 78 id. 553; Kerr on Fraud and Mistake, 332.

A stronger case must be made out to enforce specific performance than for simple or ordinary relief. 1 Story's Eq. Jur. sec. 769; *Tyson* v. *Watts*, 1 Md. Ch. Decis. 15; *Race* v. *Weston*, 86 Ill. 91.

An application for specific performance is addressed to the sound legal discretion of the court, and a decree does not follow, as a matter of course, merely because a legal contract exists. *Frisby* v. *Ballance*, 4 Scam. 287; *Lear* v. *Choteau*, 23 Ill. 39; *Stone* v. *Ballance*, 25 id. 25; *Gosse* v. *Jones*, 73 id. 508; *Race* v. *Weston*, 86 id. 91; *Tamm* v. *Lavalle*, 92 id. 263.

Messrs. DENT & BLACK, for the appellee:

If a judgment at law will not preserve to the plaintiff the benefit of his agreement, or can not accurately represent the value of the contract to the plaintiff, specific performance will be decreed. Fry on Specific Per. secs. 18, 37; *Chamberlain* v. *Blue*, 6 Blackf. 490.

Covenants of indemnity may be specifically enforced where injury is apprehended but not yet sustained. 2 Story's Eq. Jur. sec. 35, and note; *Ranelaugh* v. *Hayes*, 1 Vern. 189; *Champion et al.* v. *Brown et al.* 6 Johns. Ch. 398.

Specific performance will be decreed where the lands lie outside of the jurisdiction of the court. Fry on Specific Per. sec. 63; 1 Story's Eq. Jur. secs. 743, 744.

Still another principle entitles the complainant to maintain this bill, and that is this: an agreement for a mortgage constitutes a specific lien upon the land embraced in the agreement. *In re Howe*, 1 Paige, 125; 1 Jones on Mortgages, 163.

There is no fraud or unfairness in the contract. The mere sale of the accounts, in the absence of a warranty of their collectibility, amounts only to a warranty that the same are unpaid. *Robinson* v. *McNeill*, 51 Ill. 225.

A party will not be relieved from a mistake attributable to his own want of due care. The fact must be such that he could not, with due diligence, have obtained accurate knowledge of it. 1 Story's Eq. Jur. sec. 146.

If a party, after the discovery of a fraud or mistake, continues to hold under the contract, and does not put the other party *in statu quo*, he will be compelled to perform it. 2 Parsons on Contracts, 781; Chitty on Contracts, 814; *Besley* v. *Dumas*, 6 Bradw. 291.

The defendant having put it out of his power to rescind, should be required to perform his contract. There is here no such fraud or imposition, misrepresentation or mistake, as entitles him to any relief. *Miller* v. *Craig*, 36 Ill. 111; *Noetling* v. *Wright*, 72 id. 390; Kerr on Fraud and Mistake, sec. 82.

Mr. CHIEF JUSTICE SCOTT delivered the opinion of the Court:

There is a technical reason why the present decree must be reversed. The court directed the installments of the purchase money payable in one and two years should be paid in one and two years after the first day of August next after the making of the contract, with interest at the rate of eight per cent per annum. That would seem to be evident error.

The contract provides the deferred payments shall be made in one and two years "from this date,"—that is, the date of the contract, which the evidence shows was the 6th day of July, 1880. Should the contract be enforced at all, it must be done as the parties made it. It is apprehended the court has no rightful authority to enforce it otherwise. The cases in this court that declare this rule are numerous and consistent.

But the decision should be placed on grounds more nearly affecting the merits of the case. The bill is to enforce the specific performance of a written agreement between complainant and defendant, concerning a sale by the former to the latter of his interest in the firm of Frank Field & Co., a firm then and previously engaged in manufacturing crackers and confectioneries. As respects the terms of the agreement there can be no controversy, as it is signed by the respective parties. It obligated defendant to pay complainant $5000 for his interest in the firm of Frank Field & Co.,—$1000 of which sum was to be paid on or before the 1st day of August next after the making of the contract, $2000 in one year, and $2000 in two years, the latter payments to be evidenced by two promissory notes, bearing interest at the rate of eight per cent per annum, which said notes were to be secured by a mortgage on lands of defendant described in the bill. On the hearing, the circuit court decreed a specific performance of the contract, and that decree was affirmed by the Appellate Court for the First District. The correctness of the decision of the latter court is called in question on this appeal of defendant.

The defence made is, that the contract is not fair,—that defendant was induced to enter into it under a misapprehension of the real facts, and that complainant contributed to that result by statements not entirely candid or accurate, upon which defendant confidently relied, and was thus overreached in the transaction. The rule is a familiar one that

19—105 ILL.

applications for the specific performance of a contract are within the sound legal discretion of the court hearing the cause. That discretion, of course, is a sound legal discretion, controlled always by the equitable circumstances of the case, and not by the mere caprice of the chancellor. This branch of the law is so familiar it is hardly necessary to restate principles so well understood. Before a court of equity will compel the specific performance of a contract, it must appear it was founded on a good and valuable consideration, and is reasonable, fair and just in all its parts. It is for the reason a court of chancery will not lend its aid to give a party the benefit of an unreasonable or unjust contract, the enforcement of which would work a serious hardship. If his contract is a legal one, and its specific performance, if compelled, would be oppressive, the party seeking a remedy must find it in the law courts, and not ask a court of chancery to assist him. This court has had frequent occasion to say, a court of equity is not bound to enforce every contract, even though it be a legal one, and there might exist no sufficient reason for annulling it. Equity will withhold its aid if there be anything that makes it unreasonable or inequitable the party should have performance of his agreement.

It appears defendant performed the contract in part by making payment of most of the first installment agreed to be paid, and then ceased to do more. Shall he now be compelled to go forward and complete his agreement? To do so would undoubtedly subject defendant to very serious loss. On the principle just stated, equity will hesitate to compel the execution of a contract the performance of which would be oppressive on the obligated party. Considering the whole evidence contained in the record, it is impossible to escape the conviction it would subject defendant to considerable loss to compel him to perform the contract under the circumstances. The assets of the firm were not near so valuable as defendant supposed them to be. The concern owed many

more local bills than he had any reason to anticipate.   It is
said he should have examined the books to have ascertained
more accurately the value of the firm assets.   There are two
answers to this suggestion:   First, the books did not show
to a casual observer the exact condition of the accounts due
the firm, whether good or bad; and second, the books kept by
the regular book-keeper did not show all the local bills owing
by the firm.   That class of bills only appeared on a private
memorandum book kept by one member of the firm, who had
charge of that branch of the business.   This fact was known
to complainant, and was not known to defendant at the time
of the sale.   When complainant referred defendant to the
books for information, he did not advise him where the private
memorandum book containing an account of the city bills
owing by the firm could be found.   Had defendant examined
the books as any prudent man would have done, it will be
presumed he would have examined only such as were kept
by the book-keeper of the firm.   It could hardly be expected
he would have inquired whether the several partners kept
private memoranda of matters pertaining to the firm busi-
ness.   It is proved there were several thousand dollars of
city bills owing by the firm that did not appear on the book-
keeper's books.   The amount was certainly sufficient to very
materially affect the value of the firm assets.   Of these city
bills defendant did not seem to have had any knowledge when
he executed the written agreement it is sought by this bill
to enforce by a decree in chancery.   Complainant had full
knowledge, and he ought to have communicated to defendant
that information.   He must have known the amount of the
city bills very materially affected the value of his interest in
the firm he was selling to defendant.   In this respect he does
not stand so fair that he may invoke the aid of a court of
equity.

It will be remembered that the contract was made on the
6th day of July, 1880, and it was some time in October

before defendant refused to perform it, and offered to rescind the agreement. That, it is said, was too late; that he should have discovered sooner he had been overreached, and offered to rescind the contract. That may be, and doubtless is, true; but defendant is not asking the aid of a court of equity to enable him to rescind the agreement. Nor is it a material inquiry now whether defendant could rescind the contract after the lapse of so great a period. A more serious question, and one with which the court has now to deal, is, whether complainant has shown a contract so fairly obtained, and so just, that he may invoke the aid of a court of chancery to compel a specific performance. In view of all the circumstances in evidence it can hardly be said that he has. His contract with defendant may be a legal one, and defendant may be required to abide it or answer in damages. That question need not now be determined. Conceding that agreement is obligatory on both parties, under all the circumstances it seems most proper they should be referred to the law courts to adjust the difficulties between them. Whatever claim complainant may have against the defendant, arising out of the agreement, may be compensated by damages recoverable in an action at law. It is no answer to this view of the law to say that complainant may have told defendant, in the office of the lawyer who prepared the papers, he did not know what his interest in the firm was worth, and that he wanted it understood he was selling his interest, whatever it might be, for the sum named in the contract. He may have told him all this, and yet if he obtained an unfair contract from defendant by failing to disclose material facts affecting the value of the interest he was selling, equity will not decree the execution of the agreement in his favor. It will leave him to his remedy at law, whatever it may be.

The judgment of the Appellate Court will be reversed and the cause remanded.

*Judgment reversed.*