(No. 14403.—Reversed and remanded.)
ELLA HINKLEY, Appellee, *vs.* FRANK WYNKOOP *et al.*
Appellants.

*Opinion filed October 21, 1922—Rehearing denied Dec. 7, 1922.*

1. DEEDS—*a presumption arises against validity of conveyance where mental weakness is proved.* A presumption arises against the validity of a conveyance where real mental weakness of one of the parties is shown, and the burden of proof in such case rests upon the party claiming the benefit of the transaction to show its perfect fairness and the capacity of the other party.

2. SAME—*when conveyance will be set aside for mental weakness and undue influence.* Where mental weakness of one party to a transaction, of itself not sufficient to destroy capacity, is accompanied by undue influence, inadequacy of price, advantage taken of pecuniary necessities, ignorance and want of advice, misrepresentations or concealment, and the like, a contract or conveyance procured under such conditions will be set aside.

3. SAME—*on setting aside conveyance equity will retain jurisdiction to award full compensation.* In setting aside a contract for a conveyance on the ground of fraud the jurisdiction of equity is not ousted by the existence of a remedy at law for a personal judgment where the parties cannot be placed *in statu quo,* but having jurisdiction under the charge of fraud equity will retain jurisdiction for the purpose of awarding full compensation to the injured party.

4. SAME—*when a decree setting aside a contract for conveyance will not be reversed for omission of parties.* Where a contract for a conveyance is set aside but the parties cannot be placed *in statu quo* because the land has been re-sold and the notes transferred to third persons, a decree against the original grantee for reimbursement in money will not be reversed because said third persons were not made parties, where the objection is made for the first time on appeal and where the decree, being for reimbursement, will in nowise prejudice the omitted persons.

5. SAME—*when conservator suing to set aside contract for conveyance is not guilty of laches.* A conservator suing to set aside a contract for the exchange of land on the ground of mental weakness of his ward and undue influence of the other party is not guilty of *laches* in neglecting to bring suit until a year after the contract was made and the transaction completed, where the ward, who was declared of unsound mind shortly after completion of the transac-

tion, owned a large estate, requiring the conservator to take considerable time to ascertain all the facts.

6. SAME—*what is proper decree where parties cannot be placed in statu quo.* Upon the cancellation of a contract for the exchange of land upon the ground of mental weakness and undue influence, where the parties cannot be placed *in statu quo* because the defendant had sold the land and certain notes he got by the transaction, the decree should provide either that the complainant retain the land she took in the exchange and receive as damages the amount she lost in the trade, or that the defendant receive back his land upon his paying complainant the full value of her land and the amount of the notes given by her in the transaction.

APPEAL from the Circuit Court of Kankakee county; the Hon. A. W. DeSelm, Judge, presiding.

Miller & Streeter, and Robillard & Henry, for appellants.

A. F. Goodyear, R. F. Goodyear, and W. R. Hunter, for appellee.

Mr. Justice Duncan delivered the opinion of the court:

On July 27, 1920, Ella Hinkley, by Fred McGill, her conservator, filed her bill in the circuit court of Kankakee county against Frank Wynkoop, Mattie J. Wynkoop, his wife, Fred LeBeau, the Farmers' State Bank of St. Anne and the Kewanee Savings Bank, to compel the re-conveyance of a certain farm to her and the cancellation of certain notes signed by her, or, upon failure or inability to re-convey the farm and cancel the notes, to respond in damages for the value of the farm and the notes. On September 15, 1921, an amended bill was filed against the same parties except the two banks, and the original bill was dismissed as to the banks. The amended bill charges, in substance, that appellee is a feeble-minded person and was not competent to transact the business to which reference is hereinafter made; that Wynkoop and LeBeau, well knowing this fact, unlawfully combined and conspired together to cheat her

and defraud her of her farm aforesaid; that by false and fraudulent representations as to the character, quality and productiveness of a farm owned by Wynkoop and by fraudulently inducing her to believe that the same was not incumbered, they procured her signature to a contract to exchange her farm for Wynkoop's farm, which was incumbered for about $18,000 or more, and to execute and deliver to him two notes, one for $1500 and the other for $2500, in payment of what appellants claimed was the difference in value of the two farms; that LeBeau was assuming to act as her agent to sell or exchange her farm, and as part of the fraudulent transaction he induced her to sign and deliver to him a note for $1015, the $1000 being for commission claimed to be earned by him in securing the fraudulent exchange of farms and $15 thereof being for revenue stamps required by the Revenue law for the warranty deed to Wynkoop. The prayer of the bill is for cancellation of the contract and the deed to her farm, for cancellation and surrender of the three notes, for reasonable rent for the farm since the date of such conveyance, and that the same be re-conveyed to her free and clear of all the pending incumbrances; that in default thereof appellants be decreed to pay to appellee $20,000, the reasonable value of her farm, and also rent for the years 1920 and 1921, or legal interest on the value of the farm from June 23, 1919; that in the event the three notes, or any of them, are not delivered up and canceled, appellants be required to pay to her such sum or sums as will reimburse her for any liability or loss sustained on account thereof, and for such other and further relief in the premises as equity may require. She offered in her bill to re-convey to Wynkoop all the real estate deeded by him to her under the fraudulent contract. Wynkoop and LeBeau filed their answer to the bill, denying the charges of fraud and the mental incapacity of appellee and denying that she was entitled to any relief under her bill.

On the hearing the court made a finding of the facts in favor of the appellee. The court decreed that the warranty deed of June 23, 1919, purporting to convey appellee's Missouri farm to Wynkoop, and the three notes executed by her, were null and void, and directed Wynkoop and LeBeau to deliver the same to the clerk of the court for cancellation within thirty days from date of the decree, and to re-convey by warranty deed to appellee the Missouri farm free and clear of all incumbrances, and within the same time to pay her the sum of $3000 as rent for the use of the same from June 23, 1919, to date of decree; that in the event such conveyance and such payment are not made as directed, then appellants, or either of them, shall within said thirty days pay to appellee the sum of $20,000, the fair market value of her farm, with interest at the rate of five per cent from June 23, 1919, until payment is made; that in the event the three notes are not delivered up for cancellation within said time, then appellants shall pay to appellee within said time the amount of the principal and the interest due thereon, or on such as are not so delivered up for cancellation. It was further decreed that appellee shall not be held personally liable to pay the notes and incumbrances on the Illinois farm deeded by Wynkoop to her, and that Wynkoop and LeBeau pay the costs of the suit. From that decree Wyncoop and LeBeau have prosecuted this appeal.

At the time of the transaction about which this suit arose, appellee, a widow, resided in Martinton, Illinois, with her daughter, Jennie Pearson. She was about seventy years of age and owned about 1000 acres of land and considerable other property. During her early womanhood she was a school teacher and after her marriage resided with her husband on a farm until his death. After her husband's death she operated the farm, and it was largely through her own work and business ability that her property has been acquired. Among her various farms was one in Ralls county, Missouri, containing about 339 acres. In June, 1919, she

sent for Fred LeBeau, a real estate agent, and placed her Missouri farm in his hands for sale. On June 20, 1919, Frank Wynkoop, accompanied by LeBeau, came to appellee's residence and proposed to trade her his farm of about 338 acres in Kankakee county, Illinois, for her Missouri farm. Accompanied by Jennie Pearson they drove to the Kankakee farm for the purpose of showing appellee the land. After driving over a part of the land they drove to the village of St. Anne and to the boarding house where LeBeau lived, and had dinner. After dinner Mrs. Baron was called into the sitting room and at the instance of Wynkoop wrote a contract which was dictated by Wynkoop, the substance of which was that appellee would trade her Missouri farm for Wynkoop's farm in Kankakee county subject to a $17,500 mortgage, and in addition would give him two notes, one for $1500, payable in six months, and one for $2500, payable in one year. The contract was dictated in the presence of appellee, Jennie Pearson and Le-Beau and was immediately signed by appellee and Wynkoop. The two notes were executed by the appellee at that time. After the contract and notes were executed appellee and her daughter were driven to their home. Thereafter LeBeau, having received the deed from Wynkoop and wife to the Kankakee farm, informed appellee that he had the deed, and she went with him to Watseka, to the office of J. P. Pallissard, a lawyer, and had him draft a deed for her Missouri farm. Being informed that the deed required $15 in revenue stamps, she borrowed the $15 from LeBeau. She then gave him her note for $1015, of which $1000 was to pay him for his services in negotiating the trade and $15 for the payment of the revenue stamps. On August 20, 1919, a petition was filed by appellee's son-in-law to have her adjudged *non compos mentis,* and she was so adjudged and Fred McGill was appointed as her conservator. In the meantime, on June 30, 1919, Wynkoop had borrowed $6000 on the Missouri farm and given a trust deed as security.

He also on the same date gave a mortgage for $300 for commission in procuring the loan. On July 5, 1919, he sold the note for $1500 above mentioned to the Kewanee Savings Bank, and on July 17, 1919, he sold the $2500 note to the Farmers' State Bank of St. Anne. On December 5, 1919, Wynkoop and his wife sold the Missouri farm to four men living in Missouri for $12,000, subject to the $6000 trust deed and the $300 mortgage.

A lawyer, bank cashier, doctor, and several neighbors who had been intimately acquainted with appellee for more than thirty years, testified as to her mental condition in substance as follows: In 1919 she was a woman of about seventy years of age. All her life she had been active in business affairs, particularly in operating her various farms, both in managing them and in doing the actual work on them, and from which she had accumulated a considerable amount of property. She had been a widow for many years and relied solely upon her own judgment and business ability in transacting her business. She was an exceptionally good business woman, and was very intelligent and shrewd in all of her dealings prior to the first part of 1919. Early in that year she suffered a cerebral hemorrhage and a stroke of paralysis, and thereafter her mental condition was greatly changed. She was stupid and dull and paid no attention to what was going on about her. She could not understand any business transaction and had the mind of a mere child. The testimony was also to the effect that the paralytic stroke she had suffered had affected her physical condition. Her sight and hearing were greatly impaired and she had difficulty in walking. These conditions existed on June 20, 1919. All of these witnesses recall specific instances which impressed upon them her changed condition.

Only one competent witness testified on behalf of appellants as to the mental condition of appellee at the time in question, this being J. P. Pallissard, the lawyer in whose office appellee signed the deed to the Missouri farm. · His

evidence was to the effect that he had been acquainted with her since 1889 and had seen her frequently since that date; that he represented her in some matters previous to the making of the deed, and that on that day he believed she understood what she was doing and knew that there was a mortgage on the Wynkoop farm; and that she remarked at that time that she wanted to get rid of the Missouri farm and get her land closer home, where she could look after it. His testimony shows that he did not see her and talk to her more than two or three times a year during the time he had known her, and he did not attempt to give his opinion as to her mental soundness or unsoundness on the day in question.

Considering all the evidence relating to appellee's mental condition at the time the transaction was consummated, we are of the opinion that the circuit court was warranted in its finding that because of old age and illness she was of very weak mind at the time and was incompetent to properly guard her rights. LeBeau and Wynkoop also testified as to her mental condition, but they were not competent witnesses against her under our statute on evidence, and appellee objected to their testifying on that ground.

The Missouri farm contained from 315 to 339 acres. Appellee's witnesses valued it at from $45 to $65 per acre, while witnesses for appellants valued it at from $35 to $40. Wynkoop admitted that he borrowed $6300 on the farm since appellee deeded it to him, and that he sold it on December 5, 1919, for $12,000, subject to the incumbrance, which his grantees agreed to assume and pay and on which there had accrued at that time about $175 interest. By this transaction he realized $18,400 from the sale of the farm in cash or its equivalent. There were about 338 acres of the Illinois farm deeded by Wynkoop to appellee. The witnesses for appellee valued this land at from $35 to $40 per acre. Six witnesses for appellants testified as to the value of this land, one of whom valued it at from $75 to $80 per acre; another at $80; a third at from $80 to $100; a

fourth at from $85 to $100; a fifth at $100, and a sixth at from $100 to $115. The average value of this land as fixed by the appellants' witnesses is $91.25 per acre, or $30,842.50 for the entire farm. According to the contract signed by appellee she gave Wynkoop for his farm her own farm, of the value of $18,400, and $4000 in notes, and took his land subject to a mortgage of $17,500 and $1000 for drainage assessments, making the farm cost her $40,900. The highest average value of Wynkoop's land fixed by any of his witnesses is $107.50 per acre, or $36,345 for the entire tract, which is more than $4500 less than appellee paid for it. We think the average price fixed by appellants' witnesses for this land, $91.25 per acre, or $30,842.50 for the entire tract, is its greatest fair cash market value, and that appellee's actual loss in the deal is shown to be $10,-057.50. We think, also, that the evidence tends to show that Wynkoop led appellee to believe that she was getting his land unincumbered by paying a difference of $4000 for the exchange of farms. The testimony also tends to show that Wynkoop drew the contract and had appellee sign it, and that neither she nor her daughter read it and were not made fully cognizant of its contents. A presumption arises against the validity of the transaction in a case where real mental weakness of one of the parties is shown, and the burden of proof in such case rests upon the party claiming the benefit of the conveyance or of the contract to show its perfect fairness and the capacity of the other party. In this case the transaction is shown to be very unfair and the mental condition of appellee to be very bad.

Where mental weakness of one party to a transaction, not of itself sufficient to destroy capacity, is accompanied by undue influence, inadequacy of price, advantage taken of pecuniary necessities, ignorance and want of advice, misrepresentations or concealment, and the like, a contract or conveyance procured under such combined conditions will be defeated or set aside. It is not simply a presump-

tion of invalidity which thus arises, but the presumption has become established. (2 Pomeroy's Eq. Jur.—3d ed.— sec. 947, note 3.) The court was warranted in holding the transaction in question fraudulent, and that appellee is entitled to be relieved of the unconscionable contract or to be reimbursed for her damages if she has to assume the burden of the contract. The evidence shows it is not possible for either of appellants to restore to appellee her Missouri farm or to surrender the notes in question. In other words, she cannot have that character of relief granted to her, but there is no objection, under the proof in the record, to her having a monetary judgment or decree that will fully compensate her for her loss,—at least not from an equitable standpoint. The equitable jurisdiction of the court to rescind a sale for fraud is not ousted by the existence of a remedy at law for a personal judgment, under the showing in the record. In an action at law appellee could not have the full benefit of the rules and principles of equity she is entitled to have applied in this case, as equity having jurisdiction of this class of cases where fraud is charged will retain jurisdiction for the purpose of awarding full compensation to the injured party. The case of *Swan v. Talbot,* 17 L. R. A. (N. S.) 1066, is one of the cases holding that where restoration of property, the sale of which is sought by a bill in equity to be set aside, has become impracticable, the court may state an account between the parties and decree the payment of the value of the property received, even though such relief is not asked by the bill. That case is very similar, in principle, to the one before us. There the injured party was beastly drunk when the transaction took place and remembered little or nothing about it afterwards. In addition to this inequitable feature of the case, the price paid to the injured party for his property was greatly inadequate, as it is in this case, and these two features combined induced and authorized the court to grant the character of relief aforesaid, it appearing that the parties were

not entitled to a rescission of the contract and to a restoration to the injured party of his property.

Appellants insist that this suit cannot be maintained, in any view of the case, for the reason that the present holders of the land and notes are not parties to it, and that they are necessary parties to the suit under the previous rulings of this court. There would be much force in this contention but for the fact that appellants failed to make this defense by setting it up in their answer or otherwise. It further appears that there is no specific assignment of such an error in the record. In *Gulick* v. *Hamilton,* 287 Ill. 367, this court held that an objection to the non-joinder of a defendant in equity, if raised for the first time on appeal, is never favored, and that a decree will be reversed on such objection only where the interest of the omitted party is a present substantial one and where a decree will result in depriving such party of some material right without a hearing. A money decree for reimbursement in this case for appellee's loss and damages will in nowise prejudice the parties who are not made defendants.

Appellants' contention that the conservator was guilty of *laches* in waiting almost a year to bring this suit and until after appellants had transferred the farm and the notes to innocent third parties, and his suit should therefore be barred, will not be sustained. It is true that in this class of cases the injured party must assert his remedial rights with diligence and without delay. This rule is subject to the limitation that if the fraud is not known or could not have been reasonably ascertained by the injured party no delay will defeat his right of action. In this case appellee was adjudged of unsound mind shortly after the transaction, and no *laches* is attributable to her in that condition. Assuming that the rule applies to her conservator, from the facts that appellee had a large estate, that there were several mortgages on the Illinois farm and also drainage assessments, and that her farm was in Missouri, we may assume

that it would take the conservator considerable time to ascertain all the facts, including the value of the two farms, and that a consultation with counsel would be necessary in order to properly determine whether or not a suit should be instituted to attack the validity of the contract. The law fixes no time within which an action of this kind must be brought, and as this is an equitable proceeding there is no equitable reason shown barring her rights. We think the facts in the record show that the suit was brought within a reasonable and proper time.

We agree with the contention of appellants that the finding of the court as to the value of appellee's farm was excessive and for that reason erroneous, and that $18,400 is the fair cash market value of the land under the evidence in the record. As the parties cannot be placed *in statu quo,* appellee's damages should have been fixed upon the basis of her retaining the Illinois farm deeded her by Wynkoop and his paying her the amount of loss aforesaid she incurred in the deal, including the amount she would have to pay on the two notes, or on the basis of Wynkoop paying her the full value of the farm, $18,400, and also paying to her or to the banks the two notes, aggregating $4000, and the interest thereon, within a short time to be fixed by the court, and on payment of the latter sum that she shall deed to Wynkoop the Illinois farm, subject to the mortgage incumbrances and drainage assessments aforesaid. There is no objection to the decree being in the alternative in the above form and effect. We think, also, that the personal judgments or decrees in the cause should be several and not joint; that LeBeau ought not to have to pay more than the amount of the note accepted by him from appellee, including interest due, and that the decree against him should be that he pay said amount either to the bank holding the note or to appellee. LeBeau does not appear to have been an active participant in defrauding appellee, but appears in the record as one who silently looked on and permitted her

to be deceived and defrauded by Wynkoop. In the accounting we do not think the record evidence shows appellee was entitled to anything for the rent of her land, as she and her conservator had the opportunity to avail themselves of the rents and profits of the Illinois land. For these and other reasons we do not think there is any occasion for allowing interest on the sums to be paid appellee other than on the notes as above indicated.

For the reasons aforesaid the decree of the circuit court is reversed and the cause is remanded to the circuit court, with directions to enter a decree in accordance with the views herein expressed. It is further ordered that appellee pay the costs in this court, and that the circuit court be directed to enter a decree for costs against appellants in the circuit court. *Reversed and remanded, with directions.*