HENRY G. HEYNE, Appellee, *vs.* ELIZABETH SCHEFFAUER *et al.*—(HARRY C. SNYDER *et al.* Appellants.)

*Opinion filed April 23, 1926—Rehearing denied June 2, 1926.*

1. POWERS—*power of executor must be determined from will.* To determine the extent of a power granted an executor the intention of the testator in that respect must be gathered from the language of the will, and effect will be given to that intention if it can be done consistently with the rules of law.

2. SAME—*when executor is given power of sale—specific performance.* Where a testator, after making specific bequests, gives all the rest of his estate to certain residuary devisees and confers upon a certain bank, as his executor, "full power and authority to sell, mortgage and convey," in addition to the power to compound and settle all claims, and not as a mere incident thereto, the title of the residuary devisees is subject to the exercise of the power of sale vested in the executor; and a contract of sale executed by the executor two days prior to a contract of sale by the devisees is a valid and binding contract and will be specifically enforced and the devisees' contract will be set aside as a cloud.

3. SPECIFIC PERFORMANCE—*contract will not be enforced if inequitable.* A contract for the sale of real estate will not be specifically enforced where it is not fair and just or where its enforcement will be oppressive and inequitable.

APPEAL from the Circuit Court of Cook county; the Hon. HUGO M. FRIEND, Judge, presiding.

GRANVILLE W. BROWNING, for appellants.

EARL J. WALKER, for appellee.

WHEELOCK, NEWEY & MACKENZIE, for Elizabeth Scheffauer and Rex Mackenzie, Admr.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

Henry G. Heyne filed his bill in the circuit court of Cook county on July 16, 1923, against Elizabeth Scheffauer, Lutitia A. Beilstein, Harry C. Snyder, the Peoples Stock Yards State Bank, individually and as executor of the last will and testament of Louis E. Steinagle, deceased, Emanuel Nylin and Frank J. Kohn, for the specific performance of a contract for the sale of certain real estate. Nylin and Kohn entered a disclaimer and the other defendants answered the bill. After the cause had been referred to a master in chancery Snyder filed a cross-bill against Heyne, Elizabeth Scheffauer, Lutitia A. Beilstein and the bank as executor, for the specific performance of another and earlier contract for the sale of the same real estate. Lutitia A. Beilstein died intestate on August 6, 1924, leaving Elizabeth Scheffauer her only heir, and Rex Mackenzie was appointed ancillary administrator of her estate. He was, as such administrator, substituted as a party defendant to the bill and made a party to an amended cross-bill afterwards filed. Heyne, and the bank as executor, answered the amended cross-bill. The master recommended that the prayer of the original bill be granted. Objections and exceptions to his report were overruled, and a decree in conformity with the report and dismissing the amended cross-bill for want of equity was entered. From that decree Snyder, and the bank as executor, prosecute this appeal.

The real estate involved in this controversy consists of lots 5, 6 and 7, in block 1, in C. B. Orvis' subdivision of the northeast quarter of the southeast quarter of section 7, township 38 north, range 14, east of the third principal

meridian, in Cook county. Louis E. Steinagle died testate on January 4, 1923, having title to these lots. By the first six sections of his last will and testament he directed the payment of his debts and funeral expenses, gave four specific legacies of $500 each, and bequeathed and devised to his sisters, Lizzie A. Scheffauer and Lutitia A. Beilstein, or their survivor, the residue of his estate. By the seventh section he appointed the Peoples Stock Yards State Bank executor, and gave it "full power and authority to sell, mortgage and convey my whole estate, real and personal and every part thereof, to such person or persons and for such price or prices and upon such terms as it deems best; to compound and settle any and all claims in favor of or against my estate on such terms as it shall deem advisable and for the purposes aforesaid, to make, execute and deliver all necessary and proper conveyances and to make full receipts and charges. In no case shall any party to whom the whole or any part of my estate, real and personal, shall be conveyed, contracted to be sold or mortgaged by my said executor, and in no case shall any party dealing with my said executor, in relation to said real or personal property, be obliged to see to the application of any purchase money, money borrowed or advanced or be obliged to inquire into the necessity or expediency of any act of said executor." The will was admitted to record by the probate court of Cook county and letters testamentary were issued thereon to the Peoples Stock Yards State Bank.

The bank, as executor, entered into a contract with Snyder dated June 18, 1923, by which it agreed to sell and convey the three lots to him for $20,000. Snyder paid $1000 at the time and was required to pay the balance of the purchase price upon approval or acceptance of the title. By another contract dated June 20, 1923, Lizzie A. Scheffauer, for herself and purporting to act for her sister, Lutitia A. Beilstein, agreed to convey the same lots to Heyne for $18,000. Heyne paid $50 as earnest money and prom-

ised to pay the balance within five days after examination and approval of the title. Mrs. Scheffauer signed her sister's name to this contract and it was filed for record on June 22, 1923. After the bank was informed that Mrs. Scheffauer had entered into the contract with Heyne, two of its officers, Frank J. Kohn and Emanuel Nylin, called upon her, and pursuant to their request she executed a contract on June 22, 1923, dated the 18th of the month, for the sale of the lots by herself and her sister to Snyder on the terms embodied in the contract between the bank and Snyder. A deed in conformity with that contract was executed by Mrs. Scheffauer at the same time. The bank then sent a messenger to Mrs. Beilstein at Cleveland, Ohio, where she resided, and on the next day, June 23, 1923, she also signed the contract and deed which Mrs. Scheffauer had executed on the preceding day. This contract was filed for record on June 25, 1923. Heyne insisted upon the conveyance of the lots, and on July 11, 1923, tendered to Mrs. Scheffauer the balance of the purchase price.

Much incompetent and irrelevant evidence was introduced before the master. It will suffice to state briefly the testimony with reference to the execution of the several contracts. Heyne testified that about the 8th or 10th of June, 1923, he offered Mrs. Scheffauer and Mrs. Beilstein $18,000 for the lots; that on June 20, pursuant to a telephone message from Mrs. Scheffauer, he called at her home, and she informed him that her sister had returned to Cleveland that morning but before leaving had directed her to say that they would sell the lots to him for $18,000 cash; that with Mrs. Scheffauer's assent Arthur P. Buszin, a real estate agent, was called, who drew the contract from herself as vendor; that because the legal description of the lots was not immediately available Mrs. Scheffauer and the witness signed the contract before the description was inserted, and that after it had been incorporated and the name of Lutitia A. Beilstein added as a vendor, Mrs. Scheffauer

signed her sister's name to the contract. Heyne further testified that Mrs. Scheffauer said she notified the bank that she had sold the property to him and that the bank's officer told her that she had no right to sell; that he knew the lots had been devised to Mrs. Scheffauer and Mrs. Beilstein by their deceased brother, but that he did not know when he called on Mrs. Scheffauer that the bank had sold the lots for $20,000.

Elizabeth Scheffauer testified that on June 18 or 19 her sister, in speaking of the property, said, "I am satisfied whatever you do;" that she, Mrs. Scheffauer, told Heyne that she had called at the bank and was informed that it would not accept $18,000 for the lots because it was not enough and that Nylin and Kohn had the sale of the property; that Heyne had offered the bank $18,000 and his offer was refused; that she did not object to Heyne getting the property for that price, and that she had instructed Nylin to contest the suit in order to obtain $20,000 for the lots.

Lutitia A. Beilstein testified that before departing for her home in Cleveland on June 20, 1923, she told her sister, Mrs. Scheffauer, concerning the lots in question, "Go ahead and do what you like; whatever you do I will be satisfied;" that the bank's offer of $21,000 for the property,—$10,000 in cash and the balance on time,—was declined because they wanted all cash; that she did not remember that Kohn said, "Very well; we have sold it for $20,000 cash;" that after reaching home she received a letter from her sister that she had sold the property to Heyne and on the same day a telegram from Nylin that he had sold the property to Snyder for $20,000; that the bank's messenger followed with a confirmatory contract to Snyder and an accompanying deed, and thinking that the sale made by her sister had failed, and because the latter had signed the contract and deed brought by the messenger, she also executed both, and that she would rather have Heyne get the property and was willing to repudiate the contract with

Snyder, although he had purchased the lots two days earlier and at a higher price.

Frank J. Kohn, vice-president of the Peoples Stock Yards State Bank, in charge of real estate matters, testified that Heyne called at the bank early in June, 1923, accompanied by his brother, Fred Heyne, who offered $18,000 for the lots in question and that the offer was refused; that three or four days prior to June 18 Snyder came to the bank and said he would take the property for $21,000, paying $10,000 in cash and the balance on or before three years; that on June 18 the witness called Mrs. Scheffauer by telephone and informed her of the sale; that she said she wanted all cash; that when he inquired how much, she requested him to talk to Mrs. Beilstein, her sister, who was present; that Mrs. Beilstein answered, and he told her he would sell the lots for $20,000 cash and that she approved the sale; that Nylin then drew the contract with Snyder; that it was signed on June 18, and that Snyder gave the bank his check for $1000 as earnest money at the same time.

Emanuel Nylin, vice-president and trust officer of the Peoples Stock Yards State Bank, testified that one of Heyne's brothers called at the bank several times and said, "We want to buy the lots;" that he was told the price was $23,000, which he said was too much; that he made a counter-offer of $18,000, which was refused; that on June 18 the witness prepared the contract with Snyder; that Snyder signed it in his presence and gave the bank a check for $1000; that Kohn and the witness visited Mrs. Scheffauer at her residence on Friday following the 18th of June; that they told her that they had sold the property to Snyder for $20,000 cash and had a deposit of $1000 on account; that they wanted Mrs. Scheffauer to sign a contract as a ratification of what the bank had done and a deed to be held pending the consummation of the sale; that she signed both and that she admitted she had made a mistake in signing the contract with Heyne.

Snyder testified that he first offered the bank $21,000 for the property, one-half to be paid in cash and the balance in three or four years; that a day or two later Kohn told him that the parties wanted cash; that he then, on the 18th of June, made the offer of $20,000 in cash, signed the contract in the presence of Nylin and gave his check for $1000 on account of the purchase price, and that he recalls the date by a memorandum in his appointment book.

Appellants contend that the contract made by the bank, as executor, with Snyder is valid and binding and should be specifically enforced by a court of equity. The appellee, on the contrary, insists that the executor had no power to sell the lots to Snyder, and that in consequence the circuit court properly decreed specific performance of the contract between the residuary devisees and Heyne.

To determine the extent of the power granted the executor the intention of the testator in that respect must be gathered from the language of the will. (*Frank* v. *Frank,* 305 Ill. 181.) Effect will be given to that intention if it can be done consistently with the rules of law. (*Baley* v. *Strahan,* 314 Ill. 213.) The will in the instant case confers upon the executor full power and authority (1) to sell, mortgage and convey the whole and every part of the estate to such person or persons, for such price or prices and upon such terms as it deems best; and (2) to compound and settle any and all claims, whether in favor of or against the estate, on such terms as it deems advisable, "and for the purposes aforesaid to make, execute and deliver all necessary and proper conveyances and to make full receipts and charges." The power to sell, mortgage and convey property is independent of the power to compound and settle claims. Conveyances and other instruments may be executed and delivered by the executor for any of the designated purposes. The power to sell and convey real estate is not by the language of the will limited to a sale made necessary to pay claims or legacies. To administer

his estate the testator vested broad powers and ample discretion in the executor. His purpose in this respect is emphasized by the succeeding provision of the will, that in no case shall any party to whom the executor contracts to sell, mortgage or convey the whole or any part of the estate be obliged to inquire into the necessity or expediency of any act of the executor. After making four bequests of $500 each the testator bequeathed and devised all the rest of his estate to his two sisters. No specific devise of real estate was made. The lots in question were a part of the residuary estate. The residuary devisees held them subject to the exercise of the power of sale and conveyance vested in the executor. When the bank entered into the contract for the sale of those lots to Snyder it was acting as executor and the estate was in process of administration. The executor had the power to make that contract and it is valid and binding.

Both Nylin, a vice-president and trust officer of the bank, and Snyder, the purchaser, testified that the contract between the executor and Snyder was made on June 18, 1923, and that $1000 was paid as earnest money on the same day. There is no evidence to the contrary. Kohn, another officer of the bank, testified that Heyne came to the bank early in June, 1923, with his brother Fred, and that the latter offered $18,000 for the lots. Nylin testified that one of Heyne's brothers called at the bank on several occasions and stated that "we" want to buy the lots; that he objected to the price of $23,000 as excessive and made a counter-offer of $18,000 and that his offer was refused. Mrs. Scheffauer testified that Heyne had offered the bank $18,-000 for the property; that she told him she had been informed the bank would not accept that sum and that the bank's officers had the sale of the property in charge. After Heyne was unable to purchase the lots from the executor at his figure he entered into a contract with Mrs. Scheffauer for their purchase at his price, which was $2000 less than

321—18

Snyder had agreed to pay for them two days earlier. It would be inequitable, under the facts and circumstances shown by the record, to enforce specifically the contract under which Heyne claims. A contract for the sale of real estate will not be specifically enforced where it is not fair and just or where its enforcement will be oppressive and inequitable. *Raginsky* v. *Lawler,* 313 Ill. 441; *Sutton* v. *Miller,* 219 id. 462.

Appellee, Heyne, insists that Mrs. Scheffauer and Mrs. Beilstein prefer him as a purchaser of the lots at the price he agreed to pay. Mrs. Scheffauer apparently was willing to convey the property to Heyne at his price, but she also testified that she instructed Nylin to contest the suit in order that $20,000, instead of $18,000, might be realized. Mrs. Beilstein testified that she would rather have Heyne get the property and was willing to repudiate the contract with Snyder although his purchase was earlier and at a higher price. Whether or not the sisters are willing to convey the lots to Heyne pursuant to his contract with Mrs. Scheffauer is of no material consequence, for they cannot defeat Snyder's rights under the prior contract. It was the executor's duty to realize the higher price, and under the evidence a court of equity will aid it in the performance of that duty. Specific performance of the contract between the executor and Snyder and the removal of Heyne's contract as a cloud upon the title to the lots should have been decreed.

The decree of the circuit court is reversed and the cause is remanded to that court, with directions to dismiss the original bill for want of equity and to enter a decree in conformity with the prayer of the amended cross-bill.

*Reversed and remanded, with directions.*