(No. 26072.—

Frank W. Fewkes, Appellant, *vs.* O. C. Borah *et al.* Appellees.

*Opinion filed June 13, 1941.*

LLOYD J. VOYLES, and HASSEL B. SMITH, for appellant.

KASSERMAN & KASSERMAN, for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellant, a deaf-mute from birth, unmarried, seventy-five years of age and living alone on the 3-acre tract of land in controversy here, filed his complaint in the circuit court of Edwards county seeking to set aside a certain oil and gas lease to the three acres and a mineral deed to one-half the minerals in that tract. At the close of plaintiff's evidence the court, on motion of defendants, dismissed the complaint for want of equity. Plaintiff brings the cause directly to this court on appeal as a freehold is involved.

In his amended complaint the plaintiff charges that on February 19, 1940, one O. C. Borah and one William Funkhouser, both then unknown to the plaintiff, came to his house and sought to purchase an oil and gas lease and a mineral deed conveying an undivided one-half interest in the minerals under the 3-acre tract involved; that the oil and gas lease and deed were presented to him for his signature and that through fear of the defendants the plaintiff executed them; that the consideration for the oil and gas lease was $100 and for the deed $50, and that certain drafts were executed in payment therefor and placed in the hands of P. C. Walters, then State's attorney of Edwards county. The amended complaint alleges that the consideration is wholly inadequate; that the instruments were executed solely through fear and with no understanding as to their terms or significance; that the defendants, the lessee, N. E. West, and the grantee, Carolyn Borah, were not present at the time the conveyances were executed

and that the checks given in payment of the lease and deed were signed by the defendant O. C. Borah. The amended complaint further alleges that, later, plaintiff was advised by his nephew Walter Waters, who takes care of his business affairs, of the effect of signing the lease and deed, and said Waters called upon P. C. Walters, in whose possession the lease, deed and checks all were, and requested and instructed Walters not to deliver the lease and deed, but that Walters, not regarding those instructions, delivered the lease and deed and the same were placed on record; that, thereafter, Walters delivered to the plaintiff the checks representing the consideration for the lease and deed and plaintiff refused to accept them and returned them to the said Walters.

The amended complaint further alleges there was no valid delivery of the lease or deed and that the entire transaction took place while the plaintiff was in fear of the defendant Borah and the said Funkhouser, and that the instruments were not read nor explained to him; that he was incapable of reading them and that the defendants, by their agents, lead the plaintiff to believe that by signing the instruments he was to get an oil well. Subsequent to filing this complaint the plaintiff filed in the recorder's office an affidavit setting forth, in substance, these allegations and claiming to own the property.

Defendants answered denying the allegations of the bill of complaint and filed a cross-complaint seeking removal of the affidavit filed by plaintiff as a cloud upon their title. Plaintiff's evidence was heard before the chancellor with the result above indicated.

The plaintiff's evidence, as set out in his abstract, tends to show that no one was present at the time of this transaction except the plaintiff, Borah and Funkhouser. Plaintiff testified that he did not know Funkhouser but did know Borah; that Borah, Funkhouser and a man by the name of Walters came to his home on February 19, 1940; that

the first time two men came. They sat down and talked and left, and the next time they came back with P. C. Walters; that both calls were between 10:00 o'clock and 12:00 o'clock that day. He testified that on the second visit the three men did not knock but came in and waved their hands to him. He testified further that they wanted him to sign an oil lease; they talked about oil wells but did not give him any money. He identified the oil and gas lease and the mineral deed signed by him but stated he did not remember anything about them except that it was his signature. He testified that he could read the lease but not the small print in it, and they did not read it to him; that they sought to talk to him and he told them he could not understand; that they came to him and kept talking and rushed him and he took some steps back but they did not strike him. He testified that in transacting business he does not need any help; that his old age pension checks are usually signed by his sister. He further testified that strangers do not often come to his house and that when these men came they frightened him; that he offered them a chair to sit down and stood back away from them as they scared him; that he lived by himself and did not have much company and was scared; that he does not know what an oil and gas lease is for except that it was a paper about an oil well, and that he does not know what a mineral deed is. He also testified that his relatives did not advise him about signing these papers before he signed them.

The plaintiff's evidence also included the testimony of real estate brokers to the effect that a 3-year commercial lease on the real estate of plaintiff was worth about $250, and that one-half of the royalty under plaintiff's land is worth about $100. One of them testified, however, that there were no producing wells on the premises nor near them; that one dry well had been drilled, and that he thought the lease on plaintiff's land was worth about $125

, an acre. Another real estate broker gave the opinion that one-half the royalty would be worth about as much as the lease but he did not care to say what the value of the lease was. An adjoining neighbor also testified for the plaintiff that about February 19, 1940, some men came to his house and wanted a lease but they did not offer enough to satisfy him; that they asked him about Fewkes and he advised them to go see Waters because Fewkes could not understand what they would be saying to him.

Walter Waters, plaintiff's nephew, was called and testified that after execution of the lease plaintiff came to his house and was very much excited; that when witness learned what plaintiff had done he went to see the State's attorney Walters to ask him about it and that the latter told him he was acting as escrow agent and that he had the mineral deed and the oil and gas lease and the checks. The witness testified that he demanded return of the papers but they were not returned. He testified that plaintiff had been a deaf-mute all his life and when he had business affairs plaintiff usually went to his brother or to his sister, the witness' mother. This was all the testimony and, as we have indicated, on motion the court dismissed the complaint for want of equity.

The only question involved here is whether there is enough in this testimony to sustain a decree for plaintiff in the absence of rebutting testimony. The rule is that where a motion is made to dismiss a bill at the close of the plaintiff's testimony, such motion is in the nature of a demurrer to the evidence and admits the truth of the testimony, and in passing upon the motion it is the duty of the court to consider the testimony in the light most favorable to appellant, since such motion presents the sole question whether the evidence tends to establish a cause of action. *Williams* v. *Webster Hotel Co.* 315 Ill. 64.

Appellees say in this case that the instruments, being formally executed under seal, import consideration suffi-

cient to support them; that a deaf-mute is capable of executing a contract provided he possesses sufficient mentality to comprehend the nature and character of the transaction, and having signed them he is presumed to have known the contents, and if unable to read them his failure to secure some reliable person to read and explain them to him, would amount to such gross negligence as would estop him from avoiding them on the ground of ignorance of the contents.

The rule is that mental weakness of one party to a transaction is not, of itself, sufficient to destroy his contracts, but if accompanied by undue influence, inadequacy of price, ignorance and want of advice, misrepresentation or concealment, the contract or conveyance procured under such conditions will be set aside. *Hinkley* v. *Wynkoop,* 305 Ill. 115.

To sustain the transaction in case of a conveyance, it is not, of itself, sufficient that the grantor knew he was making a deed but it must be made to appear that he had sufficient mental capacity not only to appreciate what he was doing but to protect his own interest in the transaction. *Thatcher* v. *Kramer,* 347 Ill. 601.

In this case the plaintiff testified that the deed and lease were made by him through fear of Borah and Funkhouser. He does not indicate what that fear was, and while his original complaint alleged threats to see that his old age pension was stopped, he testifies to no such threats, and in his amended complaint is content to allege that the deeds were made through fear. Though he gives no testimony as to what the so-called escrow agreement was, if there was an agreement, the testimony of Waters is that Walters said he was an escrow agent and admitted holding the deed, lease and checks. These were later delivered though Walters was told not to deliver them. If there was an escrow agreement, it was, as plaintiff's evidence indicates, a matter not understood by him. The fact is ad-

mitted that Walters holds the checks returned by plaintiff. An escrow agreement indicates that something remains to be done. Plaintiff says he knows nothing about it. The transaction cannot be said to have been complete when Waters notified Walters not to deliver the deed and lease. The evidence for plaintiff tends to show that the lease, for which he was to receive $100, was worth from $250 to $375. There is no evidence, however, of the discovery of oil in that community but the evidence is that one well had been drilled in the neighborhood which proved to be dry. There is, however, sufficient evidence of plaintiff's infirmity to require that those dealing with him use utmost good faith.

The cause was on hearing before the chancellor and a motion at the close of plaintiff's evidence is a submission of the case on its merits. If the motion is allowed and not sustained on review the proper judgment on review is to reverse the decree entered and direct a decree in accordance with the prayer of the complaint. *Koebel* v. *Doyle,* 256 Ill. 610; *Thorworth* v. *Scheets,* 269 id. 573.

The chancellor erred in dismissing the bill on defendant's motion. The decree is reversed and the cause remanded, with directions to enter a decree granting the prayer of the complaint.

*Reversed and remanded, with directions.*