(No. 32919.—)

FRANK KUKULSKI *et al.*, Appellants, *vs.* FRANK BOLDA *et al.*, Appellees.

*Opinion filed December 7, 1953—Rehearing denied Jan. 18, 1954.*

STANLEY WERDELL, of Chicago, for appellants.

JOHN R. SULLIVAN, of Chicago, for appellees.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

In a proceeding for specific performance of a real-estate contract to compel defendant Frank Bolda to convey certain real property to the plaintiffs, Frank and Nellie Kukulski, the superior court of Cook County decreed that the complaint be dismissed for want of equity, and plaintiffs have appealed therefrom directly to this court on the ground that a freehold is involved.

The issue herein is whether the evidence establishes that at the time of the execution of the contract the defendant, Frank Bolda, was intoxicated or otherwise mentally ill so that he did not comprehend the nature of the transaction, and thereby warrants a denial of specific performance. In determining whether the superior court erred in dismissing the complaint, it is incumbent upon this court to analyze the evidence.

Plaintiffs filed their complaint for specific performance alleging the terms of a written contract entered on February 28, 1952, between plaintiffs as purchasers and Frank Bolda as the seller of certain real property, pursuant to which contract plaintiffs paid $300 earnest money. They offered to pay the balance on delivery of the deed, but defendant Bolda refused to convey the property. Plaintiffs thereupon instituted suit for specific performance, and, although Bolda entered his appearance *pro se,* he did not appear at the original hearing, and a decree *pro confesso* in favor of plaintiffs was entered at an *ex parte* hearing. Within 30

days thereof an order was entered granting defendant Bolda leave to file his petition to vacate the order on the ground that he was too intoxicated or mentally ill to comprehend the nature of the transaction, and granting Lillian Opila leave to file her intervening petition. The cause was referred to a master who heard testimony thereon.

From the evidence adduced, it appears that the property in controversy, owned by defendant Frank Bolda, a bachelor, is a 6-room bungalow, in neglect of maintenance, consisting of 4 rooms on the first floor occupied by defendant and his sister, Lillian Opila, and her four children, and two rooms on the second floor and a basement apartment, both of which were occupied by tenants. The consideration for that property under the contract was $2500 in addition to the assumption of a mortgage of $1934 and some real-estate taxes for 1951 and 1952, constituting a total sum of $4500. The appraiser testifying on behalf of defendant valued the property at between seven and eight thousand dollars, and the appraiser testifying on behalf of plaintiffs valued the property at $5800.

The testimony with reference to the condition of defendant Bolda at the time the contract was executed is highly controverted. Two days before the contract was allegedly signed, defendant Bolda was examined by a psychiatrist of the municipal court as a result of his numerous arrests for beating up his sister while he was drunk. The psychiatrist at that time made a diagnosis of "chronic alcoholism and mental deterioration which is in the classification of psychosis for mental illness." He testified that at that date Bolda had a poor contact with reality, a disturbance of memory, and a lack of exercise of good judgment, and that there would be some amnesia present, even though Bolda could have lucid moments. He recommended at that time that Bolda be certified to a State psychiatric hospital.

There was considerable inconsistency in plaintiffs' testimoney as to whether or not Bolda traded at their tavern,

and as to his sobriety. Plaintiff Frank Kukulski admitted that he knew Bolda for over five years, and stated first that Bolda never came to his tavern, then not very often, and finally that Bolda came there once a week. He admitted seeing Bolda drunk once in a while, then denied seeing him intoxicated before February 28, 1952. "As to whether he ever got intoxicated at my place, no. As to whether I saw him drinking, at any time, he wasn't sober. I don't think he was sober, I don't know." His wife testified that Bolda did not drink much in their tavern, sometimes once or twice a week, but that any time he came in, he came in drunk, but not on the 28th. Frank Kukulski stated further that Bolda did not drink in his tavern between February 22 and 28; that Bolda came into his tavern on the night of the 25th or the 26th crying and complaining about his sister and said, "I want to sell the property." On the following day Bolda came there again and started crying about bills on the property, and showed plaintiff a bruise on his head. Plaintiff Frank Kukulski asked Bolda how much he owed, and he said about $1500, and plaintiff offered him $3000 for the property and would take care of all the bills. At about 5:00 P.M. the following day, February 28, according to plaintiffs' testimony, Frank Kukulski and Bolda went together to the office of plaintiffs' lawyer, Abdon Pallasch. While waiting for the lawyer Bolda was seen by Pallasch's law clerk, who testified that Bolda appeared sober. During the conversation with Pallasch, Bolda showed them various documents, including an insurance policy, a deed and a mortgage book. Pallasch typed the contract, and after plaintiff Nellie Kukulski arrived, the parties signed the contract, and plaintiffs paid Bolda $300 earnest money. The lawyer testified that Bolda appeared sober at that time.

Defendant Bolda, however, did not recall going to Pallasch's office or signing the contract. He explained that on February 22 he drew some money and went to Kukulski's tavern to drink. He knew Kukulski about 6 years and

drank in his tavern on week ends. Bolda boasted that he had been drinking whisky and beer for about 30 years and would get drunk every Friday, Saturday and Sunday, lasting for a week and a half sometimes. He did not think that he worked the week following February 22; thought he slept on the table in the tavern or on the porch. His work record at the Canning Pecora Co. showed that he worked on February 21 and 22 at a rate of $1.75 per hour, earning $19.70 for the week ending February 23; and that he worked on February 25, 27 and 28, but not on February 26.

Defendant Bolda's sister, Lillian Opila, testified that Bolda did not come home from February 22 until the day she saw him in court, on February 29. When he came home finally to change his clothes he "stunk like a brewery." She further stated that her brother had been drinking intoxicating liquors for about the past 20 years; that he was drunk practically every Friday and Saturday, and would beat her and destroy things, so that she had to have him arrested frequently. The judge of the police court had told her to have her brother put away.

It further appears from the evidence that on March 4 the plaintiffs, their lawyer and Bolda met at the Liberty Loan Association, which held the mortgage on the controverted property, and the plaintiffs signed the mortgage. An official of the association testified that Bolda was not intoxicated, although on cross-examination he admitted that Bolda always looked drunk to him. The parties were allegedly to meet at the association on March 17, but Bolda did not appear. Pallasch sent him a registered letter informing him to be ready to close the deal on March 21 at the association, but when the parties met there Bolda refused to proceed with the deal.

On the basis of the foregoing evidence, the master found that plaintiffs were entitled to the relief sought, and recommended that the defendant be decreed to execute a deed to

the Kukulskis under the terms of the contract. The court, however, did not follow that recommendation, and held that as a result of mental deterioration defendant Bolda did not possess the mentality sufficient to enable him to comprehend the consequences to himself, or to his sister and her children, of his signing the contract, and therefore dismissed the complaint for want of equity.

Pending this appeal there was made part of this record an order of the probate court, entered May 5, 1953. That order recited that upon a hearing on February 26, 1953, before Judge Waugh, on the petition of Lillian Opila for the appointment of a conservator for Frank Bolda, the latter was referred to Dr. John Madden, a psychatrist, who, after examination, reported that he regarded Bolda as a chronically alcoholic individual, not competent to properly care for himself and his affairs, and therefore it was decreed that Edward Helenck be appointed conservator of the estate of Bolda, and be substituted as a party defendant in the litigation between Bolda and the Kukulskis.

In determining the propriety of the decree of the superior court herein, denying plaintiffs specific performance of the contract with defendant, it is established that the remedy is not a matter of right, even where the terms of the contract are clear and unambiguous, but in each instance the remedy rests in the sound discretion of the court to be determined from all the facts and circumstances. (*Edwards* v. *Brown,* 308 Ill. 350.) A court of equity will not enforce specific performance of a contract where it would be unconscionable to do so, or where its enforcement would be oppressive or inequitable, (*Heyne* v. *Scheffauer,* 321 Ill. 266; *Raginsky* v. *Lawler,* 313 Ill. 441; *Hetfield* v. *Willey,* 105 Ill. 286,) as where fraud, unfairness or advantage has been taken to procure the contract. (*Stephens* v. *Clark,* 305 Ill. 408.) Nor is it necessary that the agreement be so tainted with fraud as to be cancelable on that account, (*Keating* v. *Frint,* 291 Ill. 423,) or

warrant a decree for rescission in order to justify a denial of specific performance. *Stephens* v. *Clark*, 305 Ill. 408.

In the instant case both the master and chancellor found the consideration under the contract to be inadequate. Plaintiffs were to pay $2,500 for the two-story bungalow, and assume the unpaid taxes and mortgage, constituting a total purchase price of $4500, which was over $1300 below the valuation of even plaintiffs' appraiser, and about $3500 below the valuation of the appraiser testifying on behalf of the defendant Bolda. While the inadequacy of consideration does not in itself constitute grounds for a denial of specific performance, that fact must be considered together with the circumstances surrounding the execution of the contract to determine whether the agreement was entered into with fairness and without misapprehension or oppression. *Keating* v. *Frint*, 291 Ill. 423.

Defendant contends that he was in such a state of intoxication at the time the contract was signed that he was incapable of understanding the nature of the transaction. Plaintiffs, however, claim that he was sober, hence the contract should be binding and specifically enforced.

The cases are replete with definitions of what constitutes intoxication under the law. In the early case of *Elkin* v. *Buschner*, (Pa. unrep.), 16 Atl. 102, it was stated, "Whenever a man is under the influence of liquor so as not to be entirely at himself; he is intoxicated, although he can walk straight, although he may attend to his business, and may not give any outward and visible sign to the casual observer that he is drunk," The inquiry is whether the individual was in such mental condition as to fully understand and appreciate the force and effect of the bargain he made, (*Mulligan* v. *Albert*, 103 Wis. 140,) and to protect his own interest in the transaction. *Fewkes* v. *Borah*, 376 Ill. 596.

While plaintiffs and their attorney and his law clerk all testified that defendant Bolda was sober and knew

what he was doing at the time the contract was signed, plaintiffs do admit that defendant came into their tavern drunk, or became drunk there about once a week for several years, and was addicted to the habitual use of intoxicating liquor. Plaintiffs' son lived in the basement apartment of Bolda's house and consequently they knew of Bolda's destructive orgies when he beat his sister. It is also a reasonable inference that plaintiffs contributed to Bolda's condition, for, according to the testimony of Bolda's sister, plaintiffs told her to mind her own business when she asked them not to give Bolda any drinks because he would beat her when he became drunk.

Defendant's habitual drunkenness is overwhelmingly established by the record. His sister, Lillian Opila, testified to his drunken sprees each week end when she would be compelled to have him arrested, and Bolda himself boasted that he had been drinking whisky with beer for a chaser for over 30 years and had drunken sprees which sometimes would last an entire week or more.

Courts have recognized that it is a matter of common knowledge that such habitual drunkenness impairs the faculties of body and mind. (*Ravenscroft* v. *Stull,* 280 Ill. 406.) Moreover, the evidence herein established that there was such mental impairment to defendant Bolda. Apart from his own testimony that he had no recollection of the transaction, and had gone to plaintiffs' tavern on February 22 and began a drinking spree which lasted about a week, during which he probably slept on the table in the tavern or on the porch, there is the impartial testimony of Dr. Lorimer, predicated upon an examination of Bolda made independently of this litigation just two days before the contract was allegedly entered. As hereinbefore noted, this disinterested witness reported that Bolda was a chronic alcoholic with mental deterioration which warranted commitment to a psychiatric hospital. Dr. Lorimer testified further that while defendant might have lucid moments, there

nevertheless would be some amnesia present; and that Bolda had poor contact with reality and a lack of exercise of judgment. It may also be noted from the record that the probate court subsequently appointed a conservator for Bolda after a psychiatric examination, which found that he was incapable of taking care of his affairs.

Under the foregoing circumstances of inadequate consideration, along with a condition of habitual drunkenness and mental deterioration, it is our judgment that the transaction indicates that unfair advantage was taken of defendant Bolda, hence it would be unconscionable to enforce the contract as prayed for in plaintiffs' complaint. The superior court, therefore, did not err in dismissing the complaint for want of equity, and the decree entered by that court should properly be and is affirmed.

*Decree affirmed.*