Robert McCornack *et al.*

*v.*

Horace L. Sage.

1. PAROL EVIDENCE — *on bill to reform for mistake.* Parol evidence may be resorted to on bill to reform a written contract for a mistake in describing property sold. Such proof is not to vary the terms of the contract, but to show a misdescription of the property.

2. SPECIFIC PERFORMANCE — *of contract after reformation.* A court of equity, after reforming a written contract by correcting a mistake, may decree its specific performance.

3. SAME — *clear proof required.* To authorize the specific performance of a contract the court must be satisfied such a contract was made as is alleged, and,

after the lapse of a long period of time, the court will be cautious in enforcing a specific ·performance where there is any doubt about the existence and terms of the contract.

4. On bill by the assignee of the purchaser to enforce the specific performance of a contract for the conveyance of land some thirteen years after its date, and the execution of the alleged contract was denied under oath, and the alleged vendor during all the time paid all the taxes, and there was no proof of the payment of any money by the assignee for the contract, and the possession of the land could be referred to an arrangement made by the alleged vendor with the wife of the purchaser, as well as with the fact of a purchase, and the proof left it a matter of doubt, a decree for a reformation of the contract and a specific performance thereof was reversed.

APPEAL from the Circuit Court of Knox County; the Hon. ARTHUR A. SMITH, Judge, presiding.

This was a proceeding on the equity side of the Knox circuit court, by bill exhibited by Horace L. Sage, complainant, and against Robert McCornack, defendant.

The bill alleges that defendant, being seized in fee of the north-west quarter of section 17, in township 12 north, in range 3 east, in Knox county, did, on December 1, 1855, execute a written contract to one David McConkie, as follows :

" *Copley, Knox County, Illinois, 1st December, 1855.*

" I, Robert McCornack, hereby bind and oblige myself, my heirs and assigns, to grant a deed on twenty acres on the south end of the east half of the north-east quarter of section seventeen, in township twelve north, three east, as soon as a deed for said quarter shall be granted to me, to David McConkie, his heirs and assigns, for the sum of seventy-five dollars, now in hand paid, the receipt of which is hereby acknowledged.

" ROBERT McCORNACK."

This writing was recorded January 20, 1868.

The bill sets out this contract, and alleges that at the time it was written, an error was made in describing the premises; that the twenty acres should be on the south end of the north-west quarter, instead of on the south end of the north-east quarter, to which McCornack never had,

or pretended to have, any title. It is alleged that immediately on the execution of this contract, McConkie took possession of the twenty acres, on the north-west quarter, and so remained until he assigned the contract to complainant, Horace L. Sage. The prayer of the bill was that defendant, McCornack, be decreed to convey the premises as described in the bill to complainant.

McCornack was alone made a party defendant to the bill, and he put in his answer, denying most explicitly every material allegation in the bill, most positively denying that he ever at any time executed the contract set out in the bill.

Further answering, he says that McConkie's wife is defendant's sister; that her husband has been an habitual drunkard for thirty years, and has not supported his family, and through his worthlessness his wife and children would have come to want had not defendant provided a place for them; that for the purpose of assisting McConkie's family and keeping them out of the poor-house, defendant directed his sister and her children to move onto the land described in the bill, where they resided for a number of years, until, from her husband's drunkenness, his wife became insane, and for twelve years defendant has been obliged to support and clothe her, she being for the most of the time kept in the insane asylum at defendant's expense; that he never sold the land to McConkie, and never intended to sell it to him, but simply permitted him to live there with his family, as he, defendant, had to provide for the support of McConkie's wife; that he has been compelled to advance large sums of money for the wife, and she is now confined in the almshouse at defendant's expense, to which her husband will not contribute, but spends his money in drink, and wants this land to spend in the same way; and that Sage, the complainant, has no interest in the land or in the contract.

A replication was put in to this answer. All these proceedings were had at the November term, 1868.

From the record it appears no step was taken in the cause

until December 12, 1872, comes "Andrew Thompson, conservator of Elizabeth McConkie," and filed in court his cross-bill, making therein Horace L. Sage, the complainant, and David McConkie defendants, in which it is alleged that he was appointed conservator of Elizabeth McConkie, wife of David McConkie, by the probate court of Knox county, May 20, 1872 ; that she has been insane since 1860, and a pauper by reason of such insanity, and has no means, money, or effects, except as herein stated, and is supported and maintained by Robert McCornack and his brothers at the poor-house as an insane pauper. That her husband has not provided for her in any way since she became a pauper ; for more than ten years he has been a drunkard, and has not provided for her support. That, about the year 1852 or 1853, Robert McCornack made, executed, and delivered to said Elizabeth McConkie a certain contract in writing, by which McCornack agreed that said Elizabeth should have, occupy, and enjoy, and control for her own separate use and maintenance, and as her own separate property during her life, the piece of land of twenty acres described in complainant's bill ; one of the considerations for this contract being that his sister should not call on him for further support. That, under this contract, she went upon the land, using and controlling the same as her separate property until 1860, when she became insane and was taken to the asylum at Jacksonville, and has been insane ever since. That he can not procure the contract, not knowing where it is. That David McConkie's claim is in fraud of her rights, and the contract with Sage mere pretense. It is further alleged that Elizabeth McConkie was in possession of this tract of land at the time of the alleged contract by David with Robert McCornack ; that David never was in possession, except as her husband, he knowing that his wife was entitled to the use of the same ; and it is alleged that Sage had notice of her right and possession, and that he, Sage, never had possession, and charges, on information and belief, that the contract set up in the bill was fraudulent, fictitious, fab-

ricated, and a forgery, and void. The bill prays that this contract may be declared void, and a deed decreed to be made to complainant as conservator, or to said Elizabeth, in accordance with the contract set forth in this bill, and that the possession and rents and profits during her natural life be decreed to her.

Answers were put in by Sage and McConkie, in which the appointment of complainant as conservator is admitted, and also the insanity of Elizabeth, and furnishing her support by her brothers and sisters; and McConkie claims that he did all he could towards her support — denies being a drunkard, and denies that in 1852 or 1853 Robert McCornack made any such contract with Elizabeth in regard to this land as charged, but avers that the contract set forth in the cross-bill is the contract made to him, David McConkie; that he was put in possession, that he paid the consideration as charged in the original bill, and took possession, making valuable improvements thereon, and occupied the same until the sale to complainant, Sage; that Elizabeth's possession was as the wife of McConkie; that he was the head of the family, and in possession under the contract; makes the point that Elizabeth could not control the same as her separate property prior to 1861, even if such a contract was made, denying that any such contract was made with Robert McCornack; claims that the transaction with Sage was fair and the assignment legal, and denies all fraud, perjury, etc.

There was a replication to the cross-bill, and the cause duly set for hearing, and was heard at June term, 1876, on bill and answer, cross-bill and answer thereto, and replications and testimony, some of which was oral, and a portion by depositions.

The court decreed as prayed in the original bill, and dismissed the cross-bill. To reverse this decree McCornack and Thompson, the conservator, appeal to this court.

Messrs. Douglass & Harvey, for the appellants.

Mr. J. J. TUNNICLIFF, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

It is not questioned that chancery can correct a mistake in a contract, and after reforming the contract can decree specific performance. It is insisted by appellants that appellee is seeking to enforce a parol contract for the sale of land, inasmuch as he is obliged to resort to parol evidence to make out his case. The contract in question is a written contract attended by a mistake, as alleged, in describing the land. It is quite a familiar doctrine, recognized by this and other courts, that parol evidence may be resorted to for such purpose. The terms of the contract are in writing, and no resort to parol proof as to them is had. The bill alleges that a written contract was entered into for the conveyance of a certain tract of land, in a certain section, township, and range, but the tract was misdescribed as being in a quarter of the section to which the vendor had no title, but had title to the tract intended to be conveyed, in another quarter of the same section.

The next point appellants make is, if the allegations in the bill were all proper, the proof is not sufficiently clear to authorize a decree for specific performance.

This is the important point in the case. The court must be satisfied such a contract has been made as alleged. And not only this, but after a long period has elapsed, a court must be cautious in enforcing a specific performance of a contract where there is any real doubt about its existence and its terms. *Rector* v. *Rector*, 3 Gilm. 105.

This contract is alleged to have been made December 1, 1855, and no effort made to procure its performance until 1868, and whilst it is asserted in an oath on the one hand, and denied with equal positiveness on the other, that such a contract as alleged was ever made, conviction is not brought home to the mind, and uncertainty and doubt must exist. We have examined the testimony in this record with great

care, and we are not convinced the contract as sought to be enforced was ever made with Robert McCornack. The occupancy of the premises may as well be referred to the agreement made by McCornack with his sister that she should occupy them during her lifetime, as that they were sold by McCornack to David McConkie, and he put in possession. The fact is proved beyond question that during all the time, appellant McCornack has paid the taxes on this land, and no claim was set up to it by McConkie until this assignment of the alleged contract to the complainant, Sage, and it is not shown Sage ever paid one dollar for the contract.

It is true, there is no deed in evidence or other writing from McCornack to his sister, Elizabeth, the wife of McConkie, yet he testifies there was such a deed, which he handed to Leighton to deliver to his sister. Her subsequent insanity may account for an inability to produce it. We have no reason to doubt such a writing was delivered to her, and it is unjust on the part of her husband to attempt to deprive her of the benefit of it. On the whole case, as developed in the record, the uncertainty attending the alleged execution of the contract by McCornack, and all the accompanying facts, it does not seem to us such a case as to demand the equitable interposition of this court to correct the alleged error, and then decree a specific performance of the contract.

The decree of the court below must be reversed.

*Decree reversed.*

Mr. Justice Craig, having been of counsel in this case in the circuit court, took no part in the consideration or decision of the case.