(No. 19025.—

HENRY KRABBENHOFT *et al.* Appellees, *vs.* THOMAS J. GOSSAU *et al.* Appellants.

*Opinion filed December 20, 1929.*

THOMAS J. YOUNG, and FRANCIS F. MORAN, for appellants.

RUDOLPH & ARTHUR E. FRANKENSTEIN, and FRIEND & SAMUELS, (RUDOLPH FRANKENSTEIN, of counsel,) for appellees.

Mr. COMMISSIONER EDMUNDS presented this opinion:

This is a proceeding by Henry Krabbenhoft and Fred C. Krabbenhoft against Thomas J. Gossau and John H. Gossau to reform a contract for the sale of real estate by correcting a mistake in the description of the property involved and for specific performance of the instrument as thus modified. From a decree granting the relief prayed the Gossaus have appealed.

On October 20, 1925, Henry and Fred C. Krabbenhoft entered into a written agreement with Thomas J. Gossau whereby the Krabbenhofts agreed to purchase and Gossau agreed to sell at a price of $9500 certain premises therein described. The contract recited that $1000 had been paid by the purchasers as earnest money, to be applied on the purchase price when the transaction was consummated; that the purchasers assumed a first mortgage of $1850 due on or about fourteen months and a second mortgage of $1000 due on or about four months; that the purchasers agreed to pay, "within .......... after the title had been examined and found good or accepted by him, * .* * the further sum of five thousand six hundred and fifty and no/100 ($5650) dollars at the office of Elmer G. Olson on or before December 7, 1925, in Chicago, provided a good and sufficient statutory general warranty deed conveying to said purchaser a good and merchantable title to said premises (subject as aforesaid) shall then be ready for delivery;" and that "a certificate of title issued by the register of titles of Cook county, or complete merchantable abstract of title, or merchantable copy brought down to date hereof, or mer-

chantable title guaranty policy made by Chicago Title and Trust Company, shall be furnished by the vendor within a reasonable time." The contract also contained provisions relating to time limits for calling attention to and curing defects in the title, prescribing forfeiture of earnest money upon vendees' default, specifying that time was of the essence, stating that all notices under the contract should be in writing, and concluding with the following paragraph: "This contract and the said earnest money shall be held by Elmer G. Olson for the mutual benefit of the parties concerned, and after the consummation of the sale he shall be at liberty to retain the canceled contract permanently; and it shall be the duty of said Elmer G. Olson in case said earnest money be retained as herein provided, to apply the same, first, to the payment of any expenses incurred for the vendor by his agent in said matter; and second, to the payment to vendor's broker of a commission of five per cent on the selling price herein mentioned, for his services in procuring this contract, rendering the overplus to the vendor." The instrument was signed by Henry Krabbenhoft, Fred C. Krabbenhoft and Thomas J. Gossau.

The amended bill of complaint is against Thomas J. Gossau and his brother, John H. Gossau. It sets out the general provisions of the above instrument and alleges that complainants have always been ready and willing to go ahead with the contract and comply with all its terms and provisions which are applicable to them; that upon divers days prior to December 7, 1925, they made demand upon Thomas J. Gossau for delivery of a merchantable abstract of title, guaranty policy or Torrens certificate, and·from time to time advised Gossau that they were ready to consummate the transaction; that Gossau promised them from time to time that he would deliver the title papers; that Gossau did not live up to his obligation to deliver said papers; that on January 4, 1926, complainants again requested the title papers; that Gossau refused to deliver any

abstract of title, guaranty policy or Torrens certificate; that on January 5, 1926, complainants tendered the sum of $5650 to Gossau and demanded a deed; that the tender was refused; that the tender has always since been open and is renewed through the amended bill. The amended bill further alleges that on December 23, 1925, Thomas J. Gossau executed and delivered a deed conveying the premises in question to John H. Gossau; that this document was recorded; that John H. Gossau was fully aware of the above contract between the Krabbenhofts and Thomas J. Gossau, and that the conveyance to John H. Gossau was without consideration and for the purpose of defrauding the Krabbenhofts. The amended bill further alleges that Thomas J. Gossau placed the property with Elmer G. Olson for sale, giving the following legal description: "Lots thirty-two (32) and thirty-three (33) on Ashland avenue between 91st and 92d streets;" that the contract was prepared by Olson or one of his assistants; that the scrivener who prepared the contract, by mistake inserted the following legal description: "Lots 32 and 33 in block 11 on Ashland avenue between 91st and 92d streets in H. H. Thomas' subdivision of blocks 12 and 13 in W. O. Coles' subdivision of section 5, township 37 north, range 14 east of the third principal meridian;" that the correct legal description as it should have appeared is as follows: "Lots 32 and 33 in block 11 in Davis & Sons' subdivision of blocks 11 and 12 in the subdivision of that part westerly of the right of way of the Chicago, Rock Island and Pacific railroad, of the south half of section five (5), township thirty-seven (37) north, range fourteen (14) east of the third principal meridian;" and that the premises lastly described were the premises that were intended to be inserted in the contract and the ones contracted to be sold.

Thomas J. Gossau filed an answer and cross-bill. In his answer he denies substantially all of the material allegations of the amended bill, except that he admits the making

of the contract, the refusal to deliver title papers on January 4 and to accept the tender of January 5, 1926, basing his refusal on the ground that the purchasers had defaulted in making their final payment; further admits the deed to his brother, John H. Gossau, but says that it was a *bona fide* conveyance for a valuable consideration; says that if any mistake was made in the description of the real estate it was without his knowledge, consent or co-operation; says that he signed the contract at the solicitation of one Moore, a salesman for Elmer G. Olson, with the understanding that it was to be taken as an option to be definitely consummated on or before December 7, 1925; that neither Olson nor Moore ever demanded title papers, but, on the contrary, he made repeated demands of Olson and Moore that they carry out their agreement and that all of said demands were met with various pretexts, and that he finally notified them that unless the contract was consummated on or before December 7, 1925, he would call the deal off; that at or about the time the contract was entered into he tendered a guaranty policy to Moore, and that it was within the power of Olson and Moore to obtain such policy at any time but they refused and neglected to do so. In the cross-bill filed by Gossau he brings in Olson as a party defendant and demands forfeiture of the amount paid down, less the agent's commission.

John H. Gossau filed an answer disclaiming knowledge of substantially all the material allegations of the bill and stating that the deed from his brother was a *bona fide* conveyance for valuable consideration.

The cause was heard by the chancellor, who entered a decree dismissing the cross-bill, finding substantially all the allegations made in the amended bill to be true, and ordering reformation and specific performance of the contract as prayed. Specific portions of the decree against which particular attack is directed will be referred to in subsequent portions of this opinion.

Appellants contend that the decree was improper, because under the law and the evidence appellees were in default themselves and in no position to invoke the aid of a court of chancery. In support of this argument they point out that the tender made by appellees was on January 5, 1926, whereas by the terms of the contract the deal was to be consummated on or before December 7, 1925. The reply of appellees to this contention is that appellants did not live up to the provision of the contract which required the furnishing, within a reasonable time, of appropriate evidence of title; that no such title papers were furnished although promised by appellants at various times up to the day before tender was actually made, and that under such circumstances appellees cannot be held to have been in default.

The furnishing of appropriate title papers by the vendor was here a condition precedent to any tender on the part of the vendees. A real estate contract containing the same language with respect to the vendor's obligation to provide evidence of title as the one now before us was under consideration in *Neidhardt* v. *Frank,* 325 Ill. 596, where this court said: "The furnishing of the indicia of title by defendant was a condition precedent to any act on complainant's part except the payment of the earnest money, which was paid. No demand for the same was necessary, and under the contract in this case, no indicia of title having been furnished, no written notice from complainant to defendant with reference to the taking of title was required." In *Mishelsky* v. *Carman,* 320 Ill. 123, this court said: "It is contended that in order to secure specific performance of this contract it was necessary to tender the purchase price, and that this was not done. Under the contract the first thing to be done was the presentation of an abstract of title or guaranty policy. This was to be done by appellant or her attorney. As appellant refused to deliver the abstract or guaranty policy, it was not, under such circumstances, neces-

sary for appellee to make a tender of the purchase price, where, as here, the complainant's bill sets out that he is, and has been at all times, ready and willing to comply with the contract and stands ready to pay the balance of the purchase price. Appellee is entitled, under such circumstances, to specific performance, notwithstanding there had been no actual tender of the purchase price." *Meckel* v. *Johnson,* 231 Ill. 540, is an earlier case holding the same way.

Appellants did not hand over to appellees the guaranty policy or any other title papers. The most they claim is that Thomas J. Gossau gave to Moore, Olson's agent, an order on another party for such a document, thereby making it available to appellees. Thomas J. Gossau testified that the contract involved was brought to his home by Moore, acting as salesman for Olson, and that after he signed it Moore asked him for the title papers; that he told Moore there was a guaranty policy held by Edwin J. Nelson; that Moore asked him for an order on Nelson for the policy, whereupon he wrote out such an order and gave it to Moore; that he heard nothing more about it for about thirty days, at which time he called up Moore to find out if the deal was going through, and continued to call up and go to see Moore at frequent intervals before December 7 relative to closing the deal, and that Moore gave him to understand that there was delay in getting the papers back from the Chicago Title and Trust Company. Gossau further testified that about a week and a half before the contract expired on December 7 he "got hold of Olson," who told him that the deal would go through as soon as the purchasers could get their money free from other transactions. On the other hand, Moore denied that Gossau told him that Nelson had a guaranty policy, denied that Gossau gave him any order on Nelson for such a document, and denied that Gossau called him up or saw him later to inquire when the deal would be closed. Moore further testified that about two weeks after the contract was signed

he called up Gossau and asked for the papers, whereupon Gossau replied that he himself had taken them to the Chicago Title and Trust Company and ordered a later date. Olson denied that Gossau called him up between November 15 and December 7 with reference to the deal and denied that Gossau asked him when the deal was going to be closed. Olson testified that he had a conversation with Gossau about December 10, in the course of which Gossau said they were clearing off a cloud on the title, and that in several subsequent conversations Gossau promised the title papers.

The chancellor found that Thomas J. Gossau did not furnish any title papers as provided by the contract; that Gossau stated that he himself had ordered a guaranty policy from the Chicago Title and Trust Company and would deliver it as soon as it was completed, which would be in about ten days or two weeks; that from time to time thereafter demand was made upon Gossau for delivery of the policy, but Gossau stated it was not ready, promising to deliver it in a short time, and that such promises continued to January 4, 1926, at which time Gossau refused to furnish the policy and refused to make conveyance. The chancellor saw and heard the witnesses and was in a much better position than this court to form an opinion of the relative merit and weight of the testimony given. Where the chancellor makes a finding of fact from conflicting testimony heard by him, his finding will not be disturbed on review unless it is clearly against the weight of the evidence. (*O'Donnell* v. *Snowden & McSweeney Co.* 318 Ill. 374; *Mackie* v. *Schoenstadt,* 307 id. 398; *Sadler* v. *Drennan,* 301 id. 335.) It cannot be said that the chancellor's finding on this issue is clearly against the weight of the evidence, and appellants' contention that appellees were in default in not making tender by December 7, 1925, is therefore not well taken. In this connection the chancellor found that appellees were ready, able and willing to purchase the prem-

ises for more than three weeks prior to December 7, 1925, and fully complied with all conditions of the contract which were obligatory on them.

Appellants contend that the contract is void and unenforceable because Elmer G. Olson acted improperly as a dual agent. A similar contention was made in *Adams* v. *Larson*, 279 Ill. 268, where a sale of property was negotiated by one Finley, a real estate agent. Finley talked with the owner of the property regarding a possible sale and was later approached by a prospective purchaser who expressed interest in it. Finley took the matter up again with the owner and terms were finally agreed upon, only, however, after Finley had had several separate talks with the owner and the would-be purchaser. Finley drew the contract, embodying the terms agreed upon, and took it to the owner, who signed it. In an action brought for specific performance against the owner it was contended, as here, that Finley acted as agent for both parties without the knowledge or consent of the owner, and that therefore the owner could repudiate the contract. The court said: "When an agent is in the secret employment of the purchaser, a contract made between the principal and purchaser through the agent's efforts is not binding upon the principal, and that fact is a good defense to a bill for specific performance. (2 Mechem on Agency,—2d ed.—sec. 2138, and note; see, also, *Fish* v. *Leser*, 69 Ill. 394.) While Finley admitted that he represented both parties in causing this contract to be executed, it does not appear to have been in the sense that he was being paid a commission by each of them. It is clear there was no other agent in the matter and that both parties acted through him. Mrs. Larson fixed a price on her place, Finley communicated the offer to Adams, and Adams, after considerable negotiations, accepted her figure, and the contract was drawn on that basis. We cannot see anything in this record that shows that Finley acted in any way inconsistent with his duty toward the appellant or

concealed anything from her. Where it is known that the agent acts for both parties and there is no proof tending to show falsehood or misrepresentation, such service is all that either party has reason to expect. (1 Mechem on Agency,—3d ed.—sec. 1592.) The law is well settled that where the dual agency is disclosed to the principal the agent may act for both and the agency cannot be questioned. * * * In this case there was no proof of double commissions or secret representation of the purchaser."

In the present case Thomas J. Gossau testified that about October 20, 1925, Moore called him on the telephone and asked him if the property was for sale and inquired the price; that he told Moore it was owned by himself and his brother and was for sale for $10,000; that about twenty minutes later Moore called back and said according to their records in the office Thomas J. Gossau was the owner, and he told Moore "yes;" that Moore came over with a contract for $9000, which was rejected; that in about half an hour Moore telephoned again to find out if he was at home and then came back with the contract signed for $9500, and that after some delay, but on that same occasion, he signed it. Moore testified that Gossau had been coming into the office frequently for six or eight months; that about a month prior to October 20, 1925, Gossau said that he had the property in question for sale; that a listing card was made out bearing a price of $5500 cash; that he (Moore) submitted the property to the Krabbenhofts and they offered $9000; that he made out a contract in which that figure was named; that Gossau said this price would not do, because it had been necessary to pay some assessments; that he (Moore) talked with the Krabbenhofts again and they agreed to pay $9500; that he drew up a new contract in that amount and the next evening took it to Gossau, who signed it. By the terms of the contract itself Olson was named to hold the earnest money for the mutual benefit of the parties.

Appellants do not point out any specific act or circumstance which in itself is claimed to prove fraud or double-dealing, but, on the ground that all the circumstances surrounding the transaction "call up a reasonable suspicion of fraud," ask the court to set aside the finding of the chancellor that the contract was fairly entered into and that no fraud was committed. In this connection counsel for appellants assert that in specific performance cases the burden is on the complainant to show that the transaction is free from all suspicion of fraud. This is not the rule recently announced by this court. Fraud will not be presumed in such cases but must be proved by the weight of the testimony. (*Mackie* v. *Schoenstadt, supra; Woodrow* v. *Quaid,* 292 Ill. 27.) We have considered the circumstances particularly pointed out by appellants, and are of the opinion that we are not warranted in interfering with the chancellor's finding in this regard. *O'Donnell* v. *Snowden & McSweeney Co. supra; Mackie* v. *Schoenstadt, supra; Sadler* v. *Drennan, supra.*

Appellants contend that the chancellor erred in admitting evidence that the description of the property which was used in the contract was mistakenly erroneous; in admitting evidence that the intention of the parties was to sell and buy the property under the correct description given in the bill; in admitting evidence that the property thus correctly described was the only property owned by Thomas J. Gossau on Ashland avenue between Ninety-first and Ninety-second streets and in decreeing reformation accordingly. Counsel take the position that the description as given in the contract is "plain, clear and unambiguous and can only apply to the property described therein," and that the terms cannot be varied by parol. If the record showed that there was property to which the description as given in the contract actually fitted and that Gossau owned it, counsel would stand on firmer ground in making such contention, but such is not the case. As it is, the argument thus made is fittingly

answered in *Walden* v. *Skinner*, 101 U. S. 577, where the court said: "Courts of equity afford relief in case of mistake of facts and allow parol evidence to vary and reform written contracts and instruments when the defect or error arises from accident or misconception, as properly forming an exception to the general rule which excludes parol testimony offered to vary or contradict written instruments. Where the mistake is admitted by the other party, relief, as all agree, will be granted, and if it be fully proved by other evidence, Judge Story says, the reasons for granting relief seem to be equally satisfactory. (1 Story's Eq. Jur. sec. 156.) * * * Evidence of fraud or mistake is seldom found in the instrument itself, from which it follows that unless parol evidence may be admitted for that purpose the aggrieved party would have as little hope of redress in a court of equity as in a court of law. * * * When the deed or other written instrument is duly executed and delivered the courts of law hold that it contains the true agreement of the parties and that the writing furnishes better evidence of the sense of the parties than any that can be supplied by parol; but courts of equity, says Chancellor Kent, have a broader jurisdiction, and will open the written contract to let in an equity arising from facts perfectly distinct from the sense and construction of the instrument itself."

The correction of mistakes in written instruments, occurring by accident, fraud or otherwise, has been one of the acknowledged branches of equity jurisdiction from the earliest history of courts of chancery, and the party injured by the mistake has a right to demand correction upon furnishing satisfactory proof that it has been made. (*Ballance* v. *Underhill*, 3 Scam. 453; *Andrews* v. *Gillespie*, 47 N. Y. 487.) Courts of chancery have power to reform conveyances of land by correcting erroneous descriptions therein. (*Lane* v. *Neifert*, 240 Mich. 475, 215 N. W. 302; *Radnor Building and Loan Ass'n* v. *Scott*, 277 Pa. 56,

120 Atl. 804.) In Illinois the power of a court of chancery to reform a written contract so as to make it express the intention of the parties is not limited to striking out provisions not intended to be inserted, but extends also to the insertion of provisions which the evidence clearly shows were omitted through fraud, accident or mistake. (*Froyd* v. *Schultz*, 260 Ill. 268.) As pointed out in Pomeroy's Equity Jurisprudence, (4th ed. sec. 867, note,) in granting the equitable relief of reformation and enforcement in cases of mistake or fraud ·it makes no difference whether the failure of the written instrument to express the real agreement and intent of the parties consists in its including too much or too little, and it is immaterial whether the portion proved by parol is broader than the written instrument, covering more or different subject matter, or is narrower, embracing only a part of the subject matter or terms found in the writing.

In applying these principles it has been held proper to correct the mistake arising out of describing land as being in township 7 whereas it was really in township 6. (*Willis* v. *Henderson*, 4 Scam. 13.) In *McCornack* v. *Sage,* 87 Ill. 484, the contract described the premises as being twenty acres on the south end of the east half of the northeast quarter, etc., whereas the land intended was twenty acres on the south end of the northwest quarter. The court recognized the propriety of making the correction on proper showing of mistake. In *Adams* v. *Henderson,* 168 U. S. 573, the vendors owned ·a tract of land in a township numbered 5 and executed a written contract of sale which supposedly covered it. In the deed and mortgage, as well as in the contract, the land was by mistake of the scrivener described as being in township 6, in which township the vendors had no land. The court said: "By mistake the vendors conveyed land in another township which they did not intend to sell, to which they had no title and which the defendants had no thought of buying, and by mistake the

grantees, in order to secure the purchase price for the land they in fact purchased, mortgaged back to the plaintiffs the land in township 6 which the latter had assumed to convey to them. That a court of equity has power to correct this mutual mistake, make the instruments given in execution of the contract conform to the real intention of the parties as established by clear and convincing proof, and hold the parties to their actual agreement, cannot be doubted."

In the present case the contract called for lots 32 and 33 in block 11 on Ashland avenue between Ninety-first and Ninety-second streets, in a certain subdivision. The property actually owned by the vendor and which both sides had in mind was lots 32 and 33 in block 11 in a subdivision of another name, which was in fact on Ashland avenue between Ninety-first and Ninety-second streets, and which was, in fact, in the same section, township, range, county and State as set forth in the contract description. The chancellor was amply warranted, on authority as well as in principle, in correcting the description of the premises to conform to the intention of the parties to the instrument.

It is insisted, however, that there was no mistake from which a court of chancery is warranted in relieving here, because the scrivener was acting solely as appellees' agent and they are bound by what he did. The chancellor found that Olson represented and was the agent for both purchasers and seller, that he prepared the contract for both sides, and that the mistake arose through his error. We are not warranted in disturbing this finding. *O'Donnell* v. *Snowden & McSweeney Co. supra; Mackie* v. *Schoenstadt, supra; Sadler* v. *Drennan, supra.*

Appellants contend that the chancellor erred in entering a decree for specific performance and reformation against John H. Gossau; that he was not a party to the contract, and therefore it was unenforceable as to him for lack of mutuality; that while he knew about the contract, he knew only that it provided for consummation on December 7,

1925, and after that date was warranted in assuming that it was a dead letter, and that he is in the position not only of a half owner at the time the contract was executed but of a *bona fide* purchaser of the other half interest. Where one accepts and adopts a written contract, even though not signed by him, he is bound by its terms. (*Forthman* v. *Deters,* 206 Ill. 159.) The chancellor found that John H. Gossau lived in the same home with Thomas J. Gossau and had full knowledge of the contract, and took title to the property charged with full knowledge and notice thereof, and that he was bound by the contract and all its terms and provisions. Under the evidence these findings were well warranted. Specific performance of a contract for the sale of land will lie against subsequent purchasers or assignees of the property who take with notice of the contract. (*Fowler* v. *Fowler,* 204 Ill. 82; *Robinson* v. *Appleton,* 124 id. 276.) As the court said in *Forthman* v. *Deters, supra:* "The general principle upon which this doctrine proceeds is, that from the time of the contract for the sale of the land the vendor, as to the land, becomes a trustee for the vendee, and the vendee, as to the purchase money, a trustee for the vendor, who has a lien upon the land therefor, and every subsequent purchaser from either, with notice, becomes subject to the same equities as the party would be from whom he purchased."

It is contended that the decree was in error because it does not follow the literal terms of the contract as to payment of taxes and assessments. By the terms of the contract the vendees were to take the property subject to taxes and assessments levied after 1924 and to unpaid installments of special assessments falling due after the year 1925, taxes for 1925 to be prorated. The decree ordered all taxes to be prorated as of the date of delivery of the deed, and that the premises be conveyed subject to taxes levied after the year 1927 and to unpaid installments of special assessments falling due after 1928. This decree

was entered April 4, 1928. Appellees' bill had been filed a few days after the refusal of appellants to convey. During all this time appellants had title to and possession of the premises. It would be a strange doctrine which would compel a court of chancery to hold that parties kept out of title and possession by the vendors' default must yet assume the vendors' obligations during such period. Counsel cite *Lidikevicz* v. *Kopala,* 315 Ill. 404, and call attention to the holding that the decree in that case was in error for charging the vendors with taxes and assessments after the time provided by the contract. Counsel overlook the fact that the property in that case was improved, and the decree held the vendees entitled to all rents from the date the deed would have been received had the vendors lived up to their part of the contract. Receiving the benefits, it was manifestly equitable that the vendees assume the burdens. In the present case the vendees received nothing by way of benefit.

Appellants contend, finally, that the decree is in error because it does follow the terms of the contract and orders conveyance subject to two mortgages assumed by appellees which are alleged to have been paid off by appellants. The amount of these mortgages entered directly into the consideration agreed upon for the property. We do not see that any inequitable result need arise from carrying out this provision of the decree which orders conveyance subject to incumbrances in such amount.

The decree of the circuit court of Cook county is affirmed.

Per Curiam: The foregoing opinion reported by Mr. Commissioner Edmunds is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Decree affirmed.*