ELECTRICAL CONTRACTORS, INC., Plaintiff-Appellee, *v.* GOLDBERG & O'BRIEN ELECTRIC Co., Defendant-Appellant.

(No. 57788;

First District (2nd Division)—June 10, 1975.

Arvey, Hodes & Mantynband, of Chicago (J. Herzl Segal, Gary D. Friedman, and Lawrence C. Rubin, of counsel), for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Kendall Griffith, William J. Holloway, and Stanley J. Davidson, of counsel), for appellee.

Mr. JUSTICE LEIGHTON delivered the opinion of the court:

The case before us arises from a controversy between two companies concerning a subcontract which one claims but the other denies was a joint venture between them. On the complaint of one, the trial court, after hearing the parties, found that there was a joint venture. It ordered an accounting, heard evidence, passed on objections, and ruled that the venture made a profit in which the plaintiff was entitled to share. In this appeal we are asked to decide whether the trial court erred in finding that there was a joint venture that was never terminated, and in making the rulings by which it determined the amount of money defendant had to pay the plaintiff.

## I.

In June 1966, United Airlines was planning to construct an executive office building at O'Hare International Airport in Chicago, Illinois. Electrical Contractors, Inc., and Goldberg & O'Brien Electric Co., both Illinois corporations, had for some years been electrical contractors in the Chicago area.[1] Sometime after June 1, 1966, requests were sent out inviting the construction trade to submit bids on various aspects of the projected building. ECI received word of these requests; and through one of its employees, it obtained the plans and specifications from which an estimate for the electrical subcontract could be made. Within a short time, however, ECI was informed that it was not a qualified bidder for the job, it was not on the prequalified list of bidders.[2] Consequently, ECI's president decided to obtain a qualified partner with whom a bid could be submitted. As a result, an authorized ECI employee called Henry Goldberg, president of G&O, to inquire if his company would be

---

[1] In the balance of this opinion, Electrical Contractors, Inc., the plaintiff-appellee, will be referred to as ECI or plaintiff, as the context may require. Goldberg & O'Brien Electric Co., defendant-appellant, will be referred to as G&O or defendant.

[2] A prequalified list of bidders is a schedule of contractors who are agreeable to an owner as subcontractors within a general construction contract. It is not clear from the record why ECI was not on the list.

interested in a joint venture bid for the United Airlines electrical sub-contract. Goldberg said that because of other commitments, the company could not prepare as estimate. The employee informed Goldberg that ECI had already begun making one and would finish it in time for the bid date. The employee did not mention ECI's disqualifications as a bid-der for the United Airlines job. But after another telephone conversation, Goldberg, on behalf of G&O, agreed to make a joint venture bid with ECI. Then, using ECI's estimates, a price was agreed on; and on behalf of the two corporations, a bid was submitted to the companies who were competing for the general contract.

On June 27, 1966, after the general contract was awarded, ECI's presi-dent received a telephone call from a representative of the general con-tractor who told him that United Airlines would not accept as a sub-contractor a joint venture in which there was an unqualified bidder. In that same conversation, ECI was informed that on the following day, in the offices of the architects for the projected building, there was going to be a meeting concerning the electrical subcontract. ECI's president then called Henry Goldberg of G&O and informed him of the problem con-cerning the ECI-G&O bid because of ECI's disqualification as a bidder. There was also a discussion about the meeting on the following day in the offices of the architects.

Goldberg agreed to attend the meeting, but asked that someone with knowledge of the estimate accompany him. Consequently, the ECI em-ployee who had assembled the data, made the take-off sheets, and com-pleted the estimate, went to the meeting on behalf of ECI, bringing with him the plans, specifications and other related documents. At the meet-ing, a spokesman for the architects told all of those present that United Airlines did not want its electrical work done by a joint venture which included an unqualified bidder. The spokesman said the architects wanted to be assured that no joint venture which included an unqualified bidder would seek to do the work. Goldberg for G&O gave the assurance. He returned to his office later that day, called ECI's president on the telephone and told him that they could not get the electrical subcontract. Then, on or about July 11, 1966, based on the take-off sheets, the estimate and the data assembled by ECI, G&O was awarded the $1,000,000 elec-trical subcontract on the projected building.

Throughout their discussions, the parties had never expressly agreed on the terms of the joint venture. G&O had never participated in such an undertaking; ECI had done so on one occasion. However, it was under-stood by the parties that details concerning contribution of finance, labor, materials, and the percentage of participation by each, would be worked out if they obtained the subcontract. As to existence of a joint venture

agreement, ECI relies on custom and usage of the electrical construction trade under which ·joint venturers share equally in the burdens and the benefits of such undertakings. G&O denies there existed any custom and usage which gave specificity to the oral understanding of the parties concerning their combined efforts to obtain the subcontract. In any event, G&O furnished all the finance, all of the labor and equipment, completed the job and performed the subcontract to its completion. It did not permit ECI to devote any labor to or money in the job. The only items contributed to the performance of the subcontract by ECI was a trailer which it delivered to the job site late in July or August of 1966. After its delivery, ECI billed G&O for it, and the bill was paid.

On July 18, 1967, ECI filed the suit in this case against G&O for an accounting alleging that the $1,000,000 electrical subcontract was a joint venture from which they made a profit, entitling ECI to one-half. The complaint was answered, a trial without a jury was had, and the court ruled that the subcontract was the subject of a joint venture entered into by the parties on or about June 15, 1966, and not terminated. Later, after an accounting by G&O, ruling on objections, and hearing of evidence, the court ordered G&O to pay $131,977 to ECI as its share of the profits made by the venture.

## II.

■■ A joint venture is an association of two or more persons to carry out a single enterprise for profit. (*Ditis v. Ahlvin Construction Co.*, 408 Ill. 416, 97 N.E.2d 244; *In re Estate of Sugar*, 22 Ill.App.3d 484, 317 N.E.2d 685; 48 C.J.S. *Joint Adventures* § 1.) It is a relation voluntarily assumed; it is created when two or more persons, either expressly or by implication, manifest the intention to become so associated. *Carroll v. Caldwell*, 12 Ill.2d 487, 147 N.E.2d 69.

The relation of joint ventures can be established without formal agreement. (*Reese v. Melahn*, 53 Ill.2d 508, 292 N.E.2d 375.) Evidence of the surrounding circumstances can prove the existence of a joint venture. (*Polikoff v. Levy*, 55 Ill.App.2d 229, 204 N.E.2d 807.) Thus, the conduct of the parties, or the facts and circumstances of a given case, may show that the persons involved did in fact assume such a relation. 46 Am. Jur. 2d *Joint Ventures* § 68; see *Sorkin v. Lazarus*, 102 Ill.App.2d 484, 243 N.E.2d 450.

■■ But, a contract, that is an agreement of some kind, is essential to the relation known as joint venturers. (*Richton v. Farina*, 14 Ill.App.3d 697, 303 N.E.2d 218; 46 Am. Jur. 2d *Joint Ventures* § 8.) In other words, there must be a meeting of the minds; there must be an agreement, express or implied, one which shows the parties intended to embark on a joint

venture. (See *Hyman v. Regenstein* (5th Cir. 1958), 258 F.2d 502; Annot., 138 A.L.R. 968.) And as to proof of its existence, the burden is on the party who claims the relation exists. (*Hurst v. Papierz*, 129 Ill.App.2d 117, 262 N.E.2d 773; *Alden v. Stromsem*, 347 Ill.App. 439, 106 N.E.2d 837.) In this case, it was ECI who claimed that the electrical subcontract on the United Airlines building was the subject of a joint venture with G&O.

The undisputed evidence in the record, however, discloses that on or about June 15, 1966, ECI and G&O agreed to bid for the electrical subcontract on the projected United Airlines office building. ECI furnished the estimate, prepared the data, and did all the preliminary work that enabled the two companies to make the bid. G&O furnished its name; it was needed because ECI was not a qualified bidder. The parties intended that if their bid was successful, the electrical subcontract was to be the subject of a joint venture. They did not discuss how the subcontract was to be performed. They did not agree to the terms of the venture which was contingent on their success as bidders. They did not agree on the percentage each was to have; they did not agree on the contribution each was to make in money or labor; nor was there a meeting of the minds on what share of the profits each was to earn. Their understanding, as G&O admitted in its answer, was only concerning their joint venture to obtain the subcontract.

■■ ECI, having the burden of proof, and lacking evidence that it and G&O ever agreed on a joint venture involving the carrying out of the subcontract, relies on what it claims were customs and usages in the electrical construction trade. Customs and usages, however, cannot create a contract or bring one into being where without them none exists. (*Currie v. Syndicate Des Cultivators Des Oignons a'Fleur*, 104 Ill.App. 165; *Hedenberg v. Seeberger*, 140 Ill.App. 618; compare *Hufford v. National Retailer-Owned Grocers, Inc.*, 16 Ill.App.2d 1, 147 N.E.2d 437.) Moreover, to constitute a joint venture, there must be a community of interest and the right to joint control. (*Finn v. Drtina* (1948), 30 Wash. 2d 814, 194 P.2d 347; 46 Am. Jur. 2d *Joint Ventures* § 12.) Some courts have said that the most important criterion of a joint venture is joint control and management of the property used in accomplishing its aims. (*Detachable Bit Co. v. Timken Roller Bearing Co.* (6th Cir. 1943), 133 F.2d 632, 635; *Chisholm v. Gilmer* (4th Cir. 1936), 81 F.2d 120.) In fact, one court went to the extent of saying that "* * * there can be no joint venture or common enterprise of legal import unless there be a community of interest in the objects or purposes of the undertaking, and an equal right to direct and govern the movements and conduct of each other in respect thereto." (*Crutti v. Frank* (La. App. 1962), 146 So.2d

474, 479.) Another has pointed out that "[w]here the right to control is lacking, a joint enterprise does not exist." *Bainbrich v. Wells* (Colo. App. 1970), 476 P.2d 53, 54.

Here, it was proved that ECI did not, at any time, exert or attempt to exert any control over the work in carrying out the electrical subcontract. It did not contribute any money, labor or anything of value to the work that was done. ECI claims that after the subcontract was awarded to G&O, there was a meeting at the Standard Club in Chicago where the parties agreed on a financing arrangement whereby each was to contribute $50,000. However, it did not pay or offer to pay the amount to which the parties allegedly agreed. The only thing done by ECI was its delivery of a trailer to the job site, its billing for it, and its later acceptance of payment, in full, for G&O. Therefore, the evidence, instead of showing that the carrying out of the electrical subcontract was a joint venture, showed only that ECI and G&O entered into a joint venture in which they agreed to combine their efforts in bidding for a job. In view of the trial court's finding, the question is whether this joint venture was ever terminated.

■■ As to this, it is uncontradicted that ECI was not qualified to bid on the United Airlines subcontract. This fact was known by all who acted for it. ECI also knew that on or about June 28, 1966, spokesmen for the architects responsible to United Airlines rejected the bid submitted by the joint venture. The rejection was not caused by G&O; it was caused by the disqualification of ECI. In any event, the rejection terminated the venture into which the parties had entered on or about June 15, 1966. Thereafter, G&O had no obligation to ECI; it was free to negotiate for the subcontract on whatever terms agreeable to the United Airlines general contractor. *Southwest Drayage Co. v. Crawford Moving Vans, Inc.* (Mo. 1964), 377 S.W.2d 293.

■■ Therefore, the trial court erred in finding that the parties entered into a joint venture on or about June 15, 1966, one that was not terminated. In our judgment, a finding and judgment in favor of G&O should have been entered, with leave granted ECI to amend its pleadings, if it so desired, and proceed on some theory of recovery other than one for an accounting. Accounting is a form of relief granted only to one who has a property right in the subject concerning which an accounting is demanded. (*Carroll v. Caldwell*, 12 Ill.2d 487, 147 N.E.2d 69; 46 Am. Jur. 2d *Joint Ventures* §§ 7, 12.) Having reached these conclusions, we need not decide whether the trial court erred in making the rulings by which it determined the amount of money G&O had to pay ECI.

Accordingly, the judgment is reversed and the cause is remanded with directions to the trial court that it set aside the finding and enter judgment

in favor of G&O. On motion of either party, the court may undertake such further or other proceedings as are not inconsistent with the views expressed in this opinion.

Reversed and remanded with directions.

DOWNING, P. J., and STAMOS, J., concur.