DANIEL P. O'BRIEN, Plaintiff-Appellee, v. VICTOR CACCIATORE, Defendant-Appellant.

First District (5th Division)  No. 1—90—0605

Opinion filed March 27, 1992.

James P. Chapman and Alan Mills, both of James P. Chapman & Associates, Ltd., of Chicago, for appellant.

Martin J. Healy, Jr., and Pope & John, Ltd., both of Chicago (William R. Quinlan, of counsel), for appellee.

PRESIDING JUSTICE McNULTY delivered the opinion of the court:

This is an appeal from a judgment granting specific performance of a real estate contract. Defendant asserts on appeal that: (1) the parties were engaged in a joint venture and thus owed one another a fiduciary duty; (2) the trial court improperly excluded evidence relating to plaintiff's misrepresentations; (3) plaintiff is barred from obtaining specific performance because he comes to the court with unclean hands; and (4) if the court should affirm the trial court's judgment, then defendant is entitled to the interest and taxes he paid between the contract date and the closing date. Plaintiff contends that the trial court need not even consider these arguments because defendant's appeal is moot.

Sometime in 1985, plaintiff Daniel P. O'Brien became aware of the property located at 301-313 West North Avenue, Chicago, Illinois. In December 1985, plaintiff made an offer to purchase the property for $460,000 and the owner accepted.

Before closing the transaction, plaintiff invited Edward Kelly to join him in the purchase of the property. Kelly, in turn, involved defendant Victor Cacciatore in the acquisition. They agreed to acquire the property for purposes of investment and speculation and had no set plans for development of the property.

Defendant arranged 100% financing from the Lake View Bank for the acquisition of the property. Plaintiff, defendant and Kelly each agreed to be responsible for one-third of the principal amount of the loan.

Defendant also represented plaintiff, Kelly and himself in the acquisition as the attorney. Title to the property was taken in a land trust at the Lakeside Bank under trust No. 10—1123. The beneficial interest of that trust was held by 301-313 West North Avenue Corporation (301 Corp.) and defendant held 100% of the shares. The 301 Corp. was to act as agent for the owners of the property.

Several individuals made offers (generally in the area of $750,000) to purchase the property. One of these offers was made by Phillip Farley, a long-time friend of plaintiff. This offer was made in the name of Farley's nominee, Deluga. The offer was delivered to plaintiff and plaintiff delivered it to defendant and advised Kelly. Plaintiff indicated that the offer was acceptable to him. No contract was ever executed by and between any of the parties in ownership of this property with Phillip Farley or any representative of Phillip Farley for the sum of $750,000 or in any other amount.

Kelly decided to sell his interest in the property to plaintiff based on the figure of $750,000 which was offered by Farley. Plaintiff purchased Kelly's interest paying to him the sum of $100,000 profit and assuming his obligation for one-third of the loan obtained from the Lake View Bank.

Plaintiff then began to negotiate with defendant to obtain his one-third interest in the property. Plaintiff tendered to defendant a real estate contract dated November 19, 1987, for the purchase of defendant's interest. In response, defendant prepared a real estate contract dated December 1, 1987, as a counteroffer. Defendant testified that when he signed the contract, he thought he was signing a contract with Farley. The contract did not contain any language that the sale to O'Brien was conditioned upon a sale to Farley or anyone else.

The contract set the closing date at January 18, 1988, and plaintiff took the steps necessary to close on the property. Defendant's law office prepared all the necessary documentation for defendant to sell his one-third interest. Defendant refused to go ahead with the real estate contract with plaintiff. As a result, plaintiff instituted an action for specific performance against defendant. Plaintiff sought specific performance of the contract, possession of the management books and records, and damages for the wrongful refusal to close the transaction. Defendant asserted his affirmative defense that his refusal to close the transaction with plaintiff was justified because plaintiff breached his fiduciary duty that plaintiff owed defendant as his joint venturer in the transaction. In particular, defendant charged that he agreed to sell his interest in the property to plaintiff only because of plaintiff's representation that he would immediately sell the property in its entirety to Farley after he received the interests of his co-venturers.

After a bench trial on the merits, the trial court concluded that the evidence failed to establish the existence of a joint venture amongst plaintiff, Kelly and defendant, and since there was no joint venture, the parties had no fiduciary duty to each other. In addition, the court ruled that evidence relating to negotiations with Farley was inadmissible parol evidence, and because the unambiguous contract contained no condition that the property was subsequently to be sold by plaintiff to Farley, the court concluded that defendant refused to go ahead with the contract simply because he had "a change of heart," feeling that the property was worth more. The trial court's November 22, 1989, order, therefore, decreed specific performance, ordering that books, records and management be turned over to plaintiff but denied plaintiff's claim for money damages.

On December 18, 1989, plaintiff filed an emergency motion with the court to enforce its November 22, 1989, order. The trial court found in plaintiff's favor and set a closing date for the property. Defendant then filed his notice of appeal on February 27, 1990.

Plaintiff filed a second motion to enforce the trial court's November 22, 1988, order. When plaintiff orally presented his motion on March 8, 1990, the following exchange occurred:

"THE COURT: Counsel, has defendant in this case asked for a stay order from me?

DEFENSE COUNSEL: No. We have not your Honor.

* * *

DEFENSE COUNSEL: I didn't know if your Honor

wanted—if your Honor would entertain such a motion, that would solve all our problems.

THE COURT: Why didn't somebody make it?

DEFENSE COUNSEL: Then I, with your Honor's permission, would make an oral motion to stay this.

THE COURT: I'm going to accommodate you, and I'm going to deny it. Now go upstairs and get a stay with your appeal.

\* \* \*

THE COURT: I'm telling you, your oral motion to stay is denied. You will comply with my order unless you get a stay upstairs. Prepare that order.

PLAINTIFF'S COUNSEL: Thank you your Honor.

DEFENSE COUNSEL: Your Honor, in complying with it are we not entitled to the Court's protection that by complying with your Honor's order we are not mooting our appeal rights? That's all that we are asking. We're ready to close and comply with your Honor's order.

THE COURT: Upstairs. I have ruled on this case. I have tried it, and I have nothing but motion after motion. Now, I'm staying—I'm not going to stay it. Take it upstairs. Let the Appellate Court make a ruling.

DEFENSE COUNSEL: We're not asking you to stay it. You have denied it. We want to comply. We simply want to say respectfully—I'm sure attorneys everyday disagree with your Honor's ruling—

THE COURT: I'm not going to deprive you of your right to appeal. You have that under the law. But I'm not going to give any advisory opinions in this case either. I am not going to enter a stay order. Take it upstairs."

Defendant never attempted to obtain a stay of the trial court's judgment from this court nor did he file a notice of appeal from the March 8, 1990, order, nor amend his original notice of appeal in this regard. The parties closed on the transaction in the last week of March 1990.

Before addressing the issues raised by defendant on appeal, we must first answer the motion to dismiss taken with the case. Plaintiff seeks to dismiss defendant's appeal on the ground that it is moot because defendant accepted the benefits of the trial court's judgment without attempting to seek a stay from this court to delay the transference of his property interest pending appeal.

■ It is well established in Illinois that the payment or satisfaction of a money judgment by a judgment debtor does not bar the

prosecution of an appeal by such judgment debtor. (*Pinkstaff v. Pennsylvania R.R. Co.* (1964), 31 Ill. 2d 518, 202 N.E.2d 512.) Plaintiff relies on *County v. Malysa* (1968), 39 Ill. 2d 376, 235 N.E.2d 598, for the proposition that when one voluntarily pays or accepts the benefits of a judgment, his right to appeal becomes moot. However, *Malysa* is distinguishable in that there, the court concluded that a condemnor in an eminent domain proceeding who pays a judgment waives his right to appeal. This conclusion was based on the fact that while in an ordinary civil case a judgment debtor does not waive his right to appeal by paying the judgment because payment is considered compulsory, a judgment in an eminent domain proceeding does not impose liability upon the condemnor but merely establishes a value it must pay to acquire title. The court therefore concluded that when a condemnor pays an award he does so voluntarily and therefore waives his right to appeal. *Malysa,* 39 Ill. 2d at 379, 235 N.E.2d at 601.

It is clear that the defendant's transfer of the property in the instant case was not voluntary. If defendant had not transferred the property, or obtained a stay, he would have been held in contempt of court. Given the fact defendant's transfer of the property was not made by way of compromise or associated with an agreement not to pursue an appeal and that he transferred the property so as to avoid being held in contempt of court, it cannot be said that he voluntarily accepted the benefits under the judgment.

Furthermore, in determining whether payment or satisfaction of a judgment is voluntary and renders the right to appeal moot, it is immaterial that defendant failed to avail himself of the opportunity to obtain a stay of execution. (See *Jack Spring, Inc. v. Little* (1972), 50 Ill. 2d 351, 280 N.E.2d 208 (while posting a bond may be a prerequisite to obtaining a stay of judgment, the right to prosecute an appeal may not be so conditioned).) The failure to obtain a stay pending appeal does not, of itself, render an issue moot. (*Schaumburg State Bank v. Seyffert* (1979), 71 Ill. App. 3d 630, 390 N.E.2d 388; *Surety Development Corp. v. Grevas* (1963), 42 Ill. App. 2d 268, 192 N.E.2d 145 (the appeal is not rendered moot by payment since it was plaintiff's choice either to pay or to seek a stay and the judgment is therefore appealable regardless of the choice so long as it was made in time); but see *First Security Bank v. Income Properties, Inc.* (Mont. 1984), 675 P.2d 982 (by paying damages or surrendering property due under judgment rather than requesting a stay, defendant effectively acceded to the correctness of that judgment and the appellate court was without power to review cause).) However, when supervening events make it impossible for a reviewing court to grant effective re-

lief to any party, the issue is moot (*Panduit Corp. v. All States Plastic Manufacturing Co.* (1980), 84 Ill. App. 3d 1144, 405 N.E.2d 1316), since any finding made on the issue would have no practical effect on the controversy. (*Betts v. Ray* (1982), 104 Ill. App. 3d 168, 432 N.E.2d 1222.) Had plaintiff transferred the property to a third party, this appeal would be moot since the third party would have been protected by Supreme Court Rule 305(i) (73 Ill. 2d R. 305(i)), which provides that, in the absence of a stay within 30 days of entry of judgment, persons not parties to the action who acquire title or interest in the property after the judgment becomes final are not affected by subsequent reversal or modification thereof. The defendant's appeal here, however, is not moot since the property is still being held by plaintiff. We therefore address defendant's contentions on appeal.

■ The first contention raised by defendant is that the trial court erred in holding that plaintiff and defendant were not engaged in a joint venture. A joint venture is an association of two or more persons to carry out a single enterprise for profit. (*Electrical Contractors, Inc. v. Goldberg & O'Brien Electric Co.* (1975), 29 Ill. App. 3d 819, 331 N.E.2d 238.) A formal agreement is not essential to establish a joint venture. (*Barton v. Evanston Hospital* (1987), 159 Ill. App. 3d 970, 513 N.E.2d 65.) Rather, the existence of a joint venture may be inferred from the facts and circumstances demonstrating that the parties in fact entered into a joint venture. (*Ambuul v. Swanson* (1987), 162 Ill. App. 3d 1065, 516 N.E.2d 427.) In determining whether a joint venture exists, the intent of the parties is the most significant element. *United Nuclear Corp. v. Conversion Devices, Inc.* (1982), 110 Ill. App. 3d 88, 441 N.E.2d 1163.

The elements to be considered in determining the parties' intent are: (1) an express or implied agreement to carry on an enterprise; (2) a manifestation of intent by the parties to be associated as joint venturers; (3) a joint interest as reflected in the contribution of property, finances, effort, skill or knowledge by each party to the joint venture; (4) a measure of proprietorship or joint control of the enterprise; and (5) a provision for the sharing of profits or losses. (*Fitchie v. Yurko* (1991), 212 Ill. App. 3d 216, 570 N.E.2d 892.) In the absence of any of these elements, there is no joint venture. *United Nuclear Corp.*, 110 Ill. App. 3d 88, 441 N.E.2d 1163.

The burden of proving a joint venture is on the person who claims such a relationship exists. (*Barton*, 159 Ill. App. 3d 970, 513 N.E.2d 65.) Whether or not a joint venture exists is ordinarily a question of fact for the trier of fact (*Baker Farmers Co. v. ASF Corp.* (1975), 28 Ill. App. 3d 393, 328 N.E.2d 369), and its decision will not be dis-

turbed unless it is against the manifest weight of the evidence. *McCorkle v. Tyler Reporting Co.* (1987), 159 Ill. App. 3d 62, 512 N.E.2d 25.

■ While defendant admits that there was no written agreement establishing the existence of a joint venture, he alleges that the parties entered into a verbal partnership agreement on the day that property was purchased. The trial court determined that no joint venture had been established and that defendant simply refused to go ahead with the sale of the property because he had a change of heart. For the following reasons, we find that the trial court's determination was not against the manifest weight of the evidence.

The record in the instant case reveals that the parties purchased the property in question "for the purpose of investment and speculation," and in doing so they agreed to share profits and losses. Their intent being to purchase and sell the subject property, the parties entered into a financial arrangement to secure the property. Their method of securing the property and carrying out the enterprise, however, demonstrates that there was neither an express nor implied agreement to carry on an enterprise nor a manifestation of intent by the parties to be associated as joint venturers. While defendant contends that he entered into a verbal partnership agreement with plaintiff, he admits that the parties never discussed the length of the joint partnership agreement or the responsibilities of the parties in carrying out the joint venture. Defendant also admits that the parties did not appoint themselves to positions within the alleged venture. In *McCorkle* (159 Ill. App. 3d at 69), the court stated:

> "[W]e find that there apparently never was any agreement on several vital terms of their alleged partnership agreement, including *** the scope of Tyler's operations and the duration of the purported partnership. The absence of a meeting of the minds relating to such critical terms leads irresistibly to the conclusion that the parties did not have the intent necessary to create a partnership."

Likewise, in the case at bar, there was no meeting of the minds indicating that a joint venture was intended. (See *Electrical Contractors, Inc.*, 29 Ill. App. 3d 819, 331 N.E.2d 238.) Moreover, while a written agreement is not necessary to prove the existence of a joint venture, we do note that absolutely no documents were procured at any time throughout the parties' ownership of the property that would indicate that the parties had entered a joint venture. We find particularly significant the fact that the parties never filed partnership income tax

returns. *Seidmon v. Harris* (1988), 172 Ill. App. 3d 352, 526 N.E.2d 543.

Also indicative of the fact that the parties did not intend the purchase of the property to be a joint venture is the fact that the parties signed a note which provided for individual liability and not joint liability to the lender. That the parties were only liable for one-third of the indebtedness and not the total debt is in contradiction of partnership law, which states that all partners or joint venturers are liable jointly for all debts and obligations of the partnership or venture. (See Ill. Rev. Stat. 1987, ch. 106½, par. 15(b).) Also in contradiction to section 15(b) is the fact that when defendant represented the parties in the acquisition of the property, he billed plaintiff and Kelly separately for the services rendered by his law office.

Accordingly, the above-mentioned facts reveal that the trial court's finding that the parties never intended to enter into a joint venture was not against the manifest weight of the evidence. In light of our determination that no joint venture exists, we need not address defendant's contention that plaintiff breached his fiduciary duty to defendant.

The next contention advanced by defendant is that the trial court improperly excluded, under the parol evidence rule, testimony relating to plaintiff's alleged fraudulent misrepresentations regarding the sale of the property to Farley. For the following reasons, defendant's argument is unpersuasive.

■■ ■ Under the parol evidence rule, evidence of prior oral agreements must be excluded if it is offered to vary, alter or contradict a written agreement which is complete, unambiguous, valid and unaffected by fraud, duress, mistake or illegality. (*World Insurance Co. v. Smith* (1975), 28 Ill. App. 3d 1022, 329 N.E.2d 518.) An exception to the parol evidence rule provides that extrinsic evidence of the parties' intentions may be introduced to prove mutual mistake, conditional delivery, a lack of consideration or fraud. (*Main Bank v. Baker* (1980), 88 Ill. App. 3d 28, 410 N.E.2d 681.) Here, although defendant relies on the fraud exception to the parol evidence rule, he has not directed us to the specific portion of the record where the trial court applied the parol evidence rule. A reviewing court is entitled to have the issues clearly defined, and it is not the duty of the trial court to support vague and general contentions of error made by the appellant. (*Evink v. Pekin Insurance Co.* (1984), 122 Ill. App. 3d 246, 460 N.E.2d 1211.) Furthermore, defendant, in his affirmative defenses, never alleged fraud, duress, mistake or illegality as a grounds for refusing to perform the contract. In any event, defendant's theory of

fraud is unpersuasive. Defendant signed a contract to sell his interest in the real estate to plaintiff and this contract was drafted by defendant, who is an attorney. While defendant alleges that he only signed the contract because he thought that plaintiff was going to then sell the property to Farley, the contract makes no reference to the conveyance to Farley. It is also clear that although plaintiff did intend to sell the property to Farley, at the time plaintiff entered into the contract with defendant, plaintiff never stated that he had a written contact with Farley.

Defendant next contends that plaintiff is barred from obtaining specific performance because he comes to the court with unclean hands. This contention is also without merit.

■ The doctrine of unclean hands precludes a party who has been guilty of misconduct, fraud or bad faith, connected to the matter in the litigation, from receiving any relief from a court of equity. (*Metcalf v. Altenritter* (1977), 53 Ill. App. 3d 904, 369 N.E.2d 498.) In *Kukulski v. Bolda* (1953), 2 Ill. 2d 11, 116 N.E.2d 384, cited by defendant, the court found that plaintiff could not obtain specific performance of the contract because plaintiff was aware that defendant was too intoxicated to comprehend the nature of the transaction when the contract was executed. Here, there is no evidence that plaintiff took unfair advantage of defendant or that defendant was unable to comprehend the nature of the transaction. Defendant was a real estate lawyer and the one who prepared the real estate contract which the parties executed. In addition, according to defendant's testimony at trial, plaintiff never told defendant that he was not going to sell the property to Farley. Neither plaintiff nor Farley ever told defendant that they had a written contract for the purchase of the property. We therefore find no merit to defendant's contention that plaintiff failed to disclose all the material facts related to the sale of the property to Farley and do not find that plaintiff is barred from obtaining specific performance because of unclean hands.

Lastly, defendant maintains that the trial court erred in refusing to allow him credit for the interest he paid on the loan and the real estate taxes he paid between the closing date in the contract and the actual closing. In *Lidikevicz v. Kopala* (1925), 315 Ill. 404, 146 N.E. 461, plaintiff, vendee, sued for specific performance after defendant, vendor, refused to perform on an agreement entered into for the sale of real estate. The supreme court found that while specific performance was proper, defendant was entitled to credit for the repairs and improvements made to the property which had been completed after the closing date, the insurance premiums and property taxes defend-

ant paid for the interim period and for payments or principal and interest paid on the mortgage.

■■■ However, the supreme court in *Krabbenhoft v. Gossau* (1929), 337 Ill. 396, 169 N.E. 258, distinguished *Lidikevicz* on the basis that in that case, the property was improved and the decree held that the plaintiff was entitled to all rents from the date the deed would have been received had the defendant lived up to his part of the contract. Having received the benefits, the *Lidikevicz* court found it equitable that the plaintiff assume the burdens. The plaintiffs in *Krabbenhoft*, however, received nothing by way of benefits and the defendants during all that time had title to and possession of the premises. The court therefore stated:

> "It would be a strange doctrine which would compel a court of chancery to hold that the parties kept out of title and possession by the vendors' default must yet assume the vendor's obligations during such period." (*Krabbenhoft*, 337 Ill. at 412, 169 N.E. at 264.)

The instant case is also distinguishable from *Lidikevicz* in that plaintiff did not receive benefits from the property to be acquired during the time defendant wrongfully withheld the property. Defendant had possession of the property, his company was a tenant on the property and he refused to relinquish management of the property. Defendant also received income from the property. Accordingly, he should be held accountable for sustaining the property while he had managed and enjoyed the property.

For the reasons set forth above, the judgment of the trial court is affirmed.

Affirmed.

MURRAY and GORDON, JJ., concur.